## THE TOWN OF BELVIDERE v. THE WARREN RAILROAD COMPANY.

1. A statute authorizing the laying of a tax was repealed after an assessment of such tax, but before its collection ; *held*—that the repeal did not prevent the collection of such tax—such collection being regulated by the general tax law, which remained unrepealed.
2. The same statute imposed a penalty of twelve per cent. on failure to pay the tax assessed ; *held*—that such penalty could not be collected after the repeal of the statute—the rule being that the assessment of the tax was a thing passed and completed, and could not be affected by the repeal ; contra, with respect to the penal percentage.
3. When a statute is repealed, it must be considered as though it had never existed, except with respect to transactions passed and closed.
4. A tax being affirmed by the commissioners of appeal, was carried, on *certiorari*, into the Supreme Court and the Court of Errors, in both of

which courts the proceedings were sustained. Before the argument in the Supreme Court, the statute authorizing the tax was repealed; *held*— on a *mandamus* directing the payment of such tax, the question of the legality thereof arising from the repeal of such statute could not be raised, on the ground that the judgments on *certiorari* had conclusively settled that question.

On demurrer to return made to writ of *mandamus*.

After judgment for defendant on the demurrer, *vide* 4 *Vroom* 473, the town of Belvidere applied for and obtained a writ of *mandamus* (alternative) against the defendants, requiring them to pay the said tax and the interest thereon, (being twelve per cent. by the statute,) or show cause, &c.

The defendants made return to the writ, setting forth sundry reasons why it should not be made absolute, the principal of which were—*First*. That the tax was illegal; and, *Second*. If the tax was legal, the defendants were not liable to pay the twelve per cent. interest imposed as a penalty by the statute.

Argued before BEASLEY, CHIEF JUSTICE, and WOODHULL and VAN SYCKEL, Justices.

For the plaintiff, *Vanatta*.

For defendants, *Shipman* and *Williamson*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This case has already been twice before this court, and the results on these occasions will be found in 4 *Vroom* 173, 372.    In the brief of counsel, some of the points already decided are re-argued, but as, upon re-consideration, these former conclusions appear to be correct, the arguments upon these topics will be passed without comment.    I propose to consider the case exclusively in its new aspects.

The form in which these questions are presented is a demurrer to a return filed to an alternative *mandamus*. This mode of pleading opens for examination the contents of the writ, as well as those of the return, for, in this course of proceeding, the writ must be regarded somewhat in the light of a declaration, and if the prosecutor's case, as there found, be defective in law, the court must, at this stage of suit, so adjudge. The writ commands the defendants to pay a certain tax, which it is alleged was assessed by the assessor of the town of Belvidere, and also twelve per cent. on such tax from the time it fell due. The defendants call in question, first, the legality of the tax itself, and, failing in this, in the second place they deny their liability to pay the interest.

First, then, with regard to the body of the tax.

It appears from the writ that this assessment was made in and for the year 1865, by virtue of the act of the legislature, approved 28th of March, 1862. *Pamph. Laws* 344. It is a tax on the capital stock of the defendants, and the ground of objection now interposed to it is, that the act authorizing it to be laid has been repealed. *Nix. Dig.* 957, § 32.* In support of this position, the general legal rule, as found in *Dwar. on Stat.* 676, is referred to, viz., " That when an act of parliament is repealed, it must be considered (except as to transactions passed and closed) as if it had never existed." But even if we accept this definition as strictly correct in' its application to every case, still it is not perceived how, by force of it, the present tax is to be avoided. The case seems to fall within the exception contained in the rule as just quoted. The assessment of this tax closed and ended the transaction, so far as the act of 1862 was concerned. That act authorized the assessment, and appointed the mode of making it, but it had nothing to do with its collection, which was and is altogether regulated by other acts. When, therefore, this assessment was made, the force of the act of 1862 was, with respect to it, wholly spent and exhausted ; the thing authorized to be done was completely done, and the consequence is, that even on the most stringent applica-

* *Rev.*, p. 1160, § 90.

tion of the rule as claimed, a repeal of the statute cannot invalidate a proceeding that was fully perfected while such statute continued in force. But it is to be remembered that the retroactive effect which is to be given to statutes is largely a question of intention, and that although in criminal or penal matters it may be unobjectionable to require express words in the repealing act to preserve punishments and penalties, yet, nevertheless, when rights are given either to an individual or the public, it is obvious that a somewhat less arbitrary and inflexible test should be resorted to. As a question of intention, it is certainly very improbable that the legislature in 1866, by the repeal of the act of 1862, intended to annul assessments which had been made under the latter act, and which remained uncollected by reason of litigation, or from any other cause. Such a supposition would be most unreasonable. The effect of it would be to inflict upon the public an unjust loss, and permit the corporation, where capital had been assessed, to escape all taxation for the year in question. As the tax now in controversy was assessed during the existence of the act of 1862, and as the proceedings for its collection do not depend on that act, my conclusion is, that the subsequent repeal of that statute cannot, on general principles, invalidate such assessment.

But, in point of law, the legality of this tax cannot be put in dispute by these parties. The question has been concluded by judgment. From the statements of these pleadings, it is shown that this tax was assessed in the year 1865; that the defendants appealed to the common council of Belvidere, sitting as commissioners of appeal in cases of taxation, and that such assessment being affirmed, a tax warrant issued; that thereupon the defendants removed the assessment into the Supreme Court, and subsequently, by writ of error, into the Court of Errors, in both of which courts the legality of the tax was sustained. Is is difficult to imagine under what pretence the force of these judgments is to be overcome. The question now sought to be mooted was necessarily involved in any consideration of the case, both before the Su-

Town of Belvidere v. Warren R. R. Co.

preme Court and the Court of Errors. A judgment sustaining this tax could be rested on no other foundation than on an affirmation of its legality. No judgment could have been rendered in its favor, if it had been rendered nugatory by a repeal of the law by virtue of which it had been imposed. The only answer to this objection which has been attempted by the counsel of the defendants is founded in an error of fact. It is assumed that the argument in the Supreme Court took place before the repealing act went into effect, and that, consequently, the point now relied on could not have been raised. But this is not so. The act, by its terms, went into immediate operation, so that it had full force at the time of the discussion in the Supreme Court. The clause giving instant effect to the law has, apparently from inadvertence, been omitted in Nixon's Digest, a circumstance which appears to account for the error into which counsel on both sides seem to have fallen. After the repeal of this act, then, the Supreme Court, in solemn form, in a proceeding between these same parties, declared this assessment to be valid and effectual; and at a still later date the Court of Errors affirmed that decision. The rule of the common law, taken from that of the civil, has always been *res judicata pro veritate accipitur*. How is the present objection to be listened to, and the integrity of this principle to be preserved? The rule is worse than futile if it can be now said that this matter was not raised or decided, for such a doctrine would impair the stability of every judgment. In legal theory the conclusive presumption is, that all matters susceptible of being presented were passed upon and decided by the court at the time of rendering a judgment. The authorities are abundant, and conclusively settle this question, and many of them will be found collected in *Broom's Legal Maxims* and in the notes to the *Duchess of Kingston's case*, 2 *Smith's Lead. Cases* 436. A single quotation from the treatise of the author first above named will show the extent of this doctrine, as well as its appositeness to the present subject. " After a recovery by process of law, there must be an end

of litigation ; if it were otherwise, there must be no security for any person, and great oppression might be done under color and pretence of law. To unravel the grounds and motives which may have led to the determination of a question once settled by the jurisdiction to which the law has referred it, would be extremely dangerous. It is better for the general administration of justice that an inconvenience should sometimes fall upon an individual, than that the whole system of the law should be overturned and endless uncertainty be introduced." *Broom's Legal Maxims* 243. If there were, therefore, any substance in the point now taken, which I have already said I do not think is the case, I should still hold that it could not be now interposed, in this collateral mode, to defeat a tax which has already, in due legal course, been twice adjudged to be valid. This first objection, therefore, cannot prevail.

But, in the second place, it is said that, waiving all defence to the tax itself, there is no legal ground on which the twelve per cent. interest can be exacted.

By the plain terms of the statute this is designed as a punishment. The language is, " that if any person or corporation shall neglect or refuse to pay the tax due from such person or corporation, by the time appointed by law for payment of the same, such delinquent shall pay interest on said tax at the rate of twelve per cent. per annum upon the amount of such tax from the time of such delinquency until such tax be paid," &c. I can have no doubt that this is a pain denounced for delinquency. It does not appear that any effort has been heretofore made to collect it, or any part of it. It was not involved in the adjudication heretofore made with respect to the tax in this court and in the Court of Errors, and it is now ordered to be paid for the first time by this *mandamus*. The question, therefore, is a new one in the cause. Can this penal sum be recovered after the repeal of the act which awards it?

It will be observed that this demand cannot rest on any of the grounds upon which the right to the body of the tax

has been placed. Before the repeal of the law, nothing was done with respect to it; hence, it cannot be regarded, in the faintest degree, as a transaction ended or closed during the running of the statute. I have already said it stands unaffected by any judgment. If it is to be sustained, other principles must be superinduced than those which have been applied in support of the tax itself.

The general principle of the law on the subject is entirely clear. The repeal of a penal statute puts an end to all prosecutions under it. *Sedg. on Stat. Const. Law* 129.

It has been held that the repeal of a law imposing a penalty, though after conviction, arrests the judgment. *Commonwealth* v. *Duane,* 1 *Binn.* 601. The same doctrine has been repeatedly sanctioned by decisions in the Supreme Court of the United States. *Yeaton* v. *United States,* 5 *Cranch* 281; *Norris* v. *Crocker,* 13 *How.* 429. Upon this point there seems to be entire unanimity among the authorities.

In view of this rule, I have not been able to perceive any ground on which to sustain this demand for this penal interest. It has always been held that interest does not inhere in a tax as a legal incident. *City of Camden* v. *Allen,* 2 *Dutcher* 399. This twelve per cent. has no existence, then, except by virtue of the act of 1862, and when that act was repealed, it fell with it. If that statute, instead of directing its collection by force of the tax warrant, had authorized a suit to be brought, such suit, by the repeal of the act, according to the cases referred to, would have fallen in any of its stages anterior to final judgment. The reason for this, given in the books, is, that at the time of judgment a right to the penalty must exist, which cannot be the case unless the statute is alive which created it. It is not to be denied that this same objection applies with full force at the present time when this court is asked to compel the payment of this penalty, which, under existing circumstances, has no statutory basis whatever. My first impression was, that this interest might be regarded as a mere incident to the tax,

and that in this mode its existence might be continued. But the defects of this theory are two-fold : first, the twelve per cent. is a penalty, and not a mere incidental part of the sum to be paid ; and, in the next place, even if it should be regarded as an incident, it is altogether a statutory incident, and consequently would expire with the law from which it proceeded. Nor am I able to yield to the other suggestion, that the act of 1866 preserves and keeps alive this penalty. *Nix. Dig.* 957, § 27.*

According to my apprehension, that statute in the section referred to has no retrospective operation, its entire effect being to apply a similar penalty to future delinquencies. Every expression in this clause has clearly a prospective aspect, and its language cannot be strained so as to reach past transactions on account of the existence of a supposed inconvenience or a *casus omissus.* The leaning of the law has always been against giving to statutes any retroactive effect by implication. " A legislative enactment," in the language of 2 *Institutes* 292, " ought to be prospective, and not retrospective, in its operation ;" and on the presumption that this maxim prevails with the law-making power, it has ever been requisite, when the endeavor has been to apply a statute to old affairs, to show either express words indicative of such a purpose, or circumstances giving rise to a necessary intendment. In the present instance there are certainly no express words for that purpose in this section, and I do not perceive any circumstances from which such a design can be inferred.

In my opinion the interest on this tax cannot be collected.

With respect to the formal objections made to the case of the prosecutors, as it appears upon the record, it is not considered necessary to comment upon them *in extenso.* None of them appear to be well taken. It is proper that the court by its *mandamus* should order this tax paid to the fiscal officer of the municipal corporation to which it is due. It is not necessary that such tax should pass through the hands of the officers who are authorized to make collections of the taxes. The purpose of the *mandamus* is to supersede that

*\*Rev., p.* 1159, ∂ 85.

usual mode of collection, on the ground, under the circumstances of the present case, of its entire inefficacy. Nor is there any validity in the exception that there is a misnomer in the corporate name of the applicant for this writ of *mandamus*. The existence of such an error is a mere assumption, without anything now before the court to support it. The effect of the demurrer does not reach back beyond the face of the writ, and the consequence is, it is not now judicially apparent who made the application for this writ. The legal principle is, that with respect to courts of general jurisdiction the presumption is, that their proceedings are correct, and the consequence is, that looking at the present record we must intend that this *mandamus* has been issued at the instance of a party who was legally entitled to ask its assistance. What the effect of the alleged error, if it had appeared to the court, would have been, it is not necessary to adjudge.

I think this *mandamus* is too broad in requiring the payment of the twelve per cent. interest.

CITED *in State, Copeland, pros.,* v. *Passaic,* 7 *Vr.* 384; *State, Dixon, pros.,* v. *Jersey City,* 8 *Vr.* 40; *State, Harris, pros.,* v. *Jersey City,* 9 *Vr.* 87; *State, N. Ward N. Bk., pros.,* v. *Newark,* 10 *Vr.* 386; *State, Alden, pros.,* v. *Newark,* 11 *Vr.* 97.