STATE OF NEW JERSEY, BY SALVATORE A. BONTEMPO, COMMISSIONER OF CONSERVATION AND ECONOMIC DEVELOPMENT, RESPONDENT-CROSS-APPELLANT, v. SILVIO A. LANZA, APPELLANT-CROSS-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 22, 1960—Decided February 23, 1960.

Before Judges GOLDMANN, CONFORD and FREUND.

*Mr. Philip Lindeman, II,* appeared for the motion (*Mr. David D. Furman,* Attorney General, attorney; *Mr. Bernard Hellring,* special counsel).

*Mr. Vito F. Lanza* and *Mr. Silvio A. Lanza* appeared *contra.*

PER CURIAM. On October 8, 1959 a notice of appeal was filed by Silvio A. Lanza as "defendant and attorney in person *pro se,*" and Vito F. Lanza, as "intervening defendant and attorney in person *pro se,*" from a final judgment entered September 29, 1959 by Judge Mintz, then temporarily assigned to the Law Division, Hunterdon County, directing plaintiff to pay Silvio A. Lanza $57,623.93 for his property taken in condemnation in the Round Valley area of Hunterdon County. The judgment followed upon a comprehensive opinion filed by the trial judge on August 7, 1959, whose findings were incorporated in the judgment by reference. The notice of appeal sought a review of not only the adequacy of the award but also, among other things, certain constitutional questions raised in the course of the 22 days of hearings held between October 30, 1958 and July 6, 1959, the denial of a new trial, and the court's refusal to permit Vito F. Lanza to intervene as a party at the hearing.

The Lanzas subsequently filed a "supplemental and amended notice of appeal" on October 14, 1959, seeking to review two orders by Judge Mintz. The first, dated September 29, 1959, denied defendant Silvio Lanza's motion for a new trial, his oral applications to take certain additional testimony and to have the entire proceedings declared invalid under the State and Federal Constitutions, as well as his application for additional and amended findings of fact. It also denied Vito Lanza's oral application for intervention. The second order, entered October 9, 1959, directed plaintiff to pay the condemnation monies into court.

Plaintiff has filed a notice of cross-appeal challenging the amount of the award.

The matter is before us on plaintiff's motion to dismiss the appeal on the ground that defendant Silvio had not complied with the jurisdictional requirements of *R. R.* 1:2–8(*a*) and (*e*), in that he failed to include in his notice of appeal a certification that he had deposited with the stenographic reporter a sum sufficient to pay the required fee for the preparation of a transcript, as well as for the further reason that he had in fact failed to deposit such sum with the reporter. Silvio and Vito Lanza thereupon filed their affidavit in opposition and for instructions, seeking to explain therein the reason for the delay in ordering and paying for the transcript. It is implicit in these papers that Vito considers himself a party to these proceedings in their entirety.

The first matter to be considered is the right of Vito Lanza to be heard on this appeal. He claims that he has a 10% interest in the lands condemned, as evidenced by a deed from his brother Silvio, dated June 24, 1958 and recorded in the Hunterdon County Clerk's Office on June 30 following, and therefore not only has a right to appear on this appeal but also was entitled to intervene as a party in interest in the court below. The claim is not a new one. It was first made when the matter was before the Law Division for full trial, on appeal from the award of the condemna-

tion commissioners. At that time Vito, claiming a status in the proceedings, filed his appearance, demanded that copies of all papers be served upon him, and also demanded discovery. Upon plaintiff's motion, Vito's appearance was expunged and his applications for service of all papers upon him and for discovery denied, all as set out in an order entered by Superior Court Judge Waugh on August 1, 1958. Judge Waugh's order was appealed (*Docket* A–640–57) and was the subject of a *per curiam* opinion filed by this Part on March 6, 1959, resulting in a dismissal of the appeal. That opinion reviews the condemnation proceedings and, in particular, Vito Lanza's participation therein. It is now being published. *State v. Lanza,* 60 *N. J. Super.* 130; petition for certification dismissed, May 25, 1959.

At the oral argument on the present motion to dismiss the appeal we inquired initially as to the right of Vito Lanza, a New York attorney, to appear *pro se,* having in mind Judge Waugh's order, just referred to, and the unsuccessful appeal therefrom. We were not informed that in the order entered by Judge Mintz on September 29, 1959 there was a specific provision denying Vito Lanza's oral application for leave to intervene, and we therefore mistakenly directed that he apply to Judge Mintz for the entry of an order formally denying intervention. Such an order is clearly unnecessary in view of the September 29, 1959 order which, we now learn, memorialized not only the denial of Vito's application made at the start of the hearings in the Law Division, but again at the conclusion thereof.

The right of Vito Lanza to appear and argue the pending appeal involves only the question of whether intervention was properly denied in the Law Division. It would seem that this issue should be determined before we consider the main appeal, since Vito has no status if the order below was proper. We accordingly direct the parties to appear before this Part, sitting in Newark on March 14, 1960, to argue the question of why an order should not be entered that the appeal of Vito Lanza from the denial of intervention

be considered and disposed of prior to the hearing of the issues on the main appeal dealing with the legality and adequacy of the condemnation award.

We are faced with the additional question of whether Vito Lanza should be permitted to represent his brother Silvio. As noted in our March 6, 1959 opinion, Vito has advised and collaborated with his brother throughout the case since its very inception. He has been in regular attendance at every argument in this court, and he sat alongside Silvio's attorney during the valuation trial in the Law Division. He has also participated in engaging and dealing with the several New Jersey attorneys who represented Silvio in the past. Silvio has had three or four such counsel in succession, who apparently withdrew from the case because of disagreements.

It is to be noted that Vito Lanza obtained the deed of June 24, 1958 and recorded it only three days after our Supreme Court determined the question of the constitutionality of the Round Valley Act, *N. J. S. A.* 58:20–1 *et seq.*, under which the condemnation proceedings were taken. *State v. Lanza,* 27 *N. J.* 516 (1958).

There has been no motion before us that Vito be admitted *pro hac vice* to argue the appeal on behalf of his brother. Were such a motion to be made, we would in the exercise of our discretion deny it in light of our experience with Mr. Lanza. *R. R.* 1:12–8; see *State v. Lanza, supra,* 60 *N. J. Super.* 130. The not inconsiderable award made to Silvio, as well as the much greater valuation he places upon the property condemned (some $350,000), is sufficiently large to warrant his engaging New Jersey counsel to handle this matter. The absence of such counsel at different stages of the proceedings may well have complicated and unnecessarily prolonged final disposition of the action. It is, however, Silvio Lanza's prerogative to appear in these proceedings *pro se,* if he so chooses. However, Vito may not represent him, directly or indirectly.

We turn to the State's notice to dismiss the appeal because of defendant's failure to observe the provisions of *R. R.*

1:2–8(a) and (e). We entertain not the slightest doubt that Silvio, who has been advised and directed by a number of New Jersey counsel, and by his brother Vito in particular, must have more than a passing acquaintance with the rules controlling appeals. It is now claimed that the delay since early October 1959 in perfecting the appeal has been due to uncertainty as to whether a complete transcript could be prepared because one of the court reporters who recorded the trial was temporarily in the Army. (He returned in December 1959, and Lanza was so informed.) Another reason assigned is that there is some question as to who had to pay for the transcript, there being a cross-appeal. There is no merit to either contention.

 R. R. 1:2–8(a) requires that where the provisions of paragraph (e) of the rule are applicable, "the *appellant* shall endorse on the notice of appeal a certification that on a date stated he complied therewith." Paragraph (e) provides that

"Where an appeal is taken from a court in which a stenographic report of the evidence or proceedings was taken, the *appellant*, on or before the date of filing the notice of appeal, shall serve upon the stenographic reporter who reported the cause, or his successor, a written request for the preparation of one original and one first carbon copy of the transcript, or such portion or portions thereof as the appellant and the respondent shall agree (which agreement shall be in writing and filed with the clerk of the court from which the appeal is being taken) will be sufficient to enable the appellate court to decide the questions to be raised on the appeal. Except where the transcript is ordered by the State or any of its political subdivisions, the *appellant* shall deposit with the stenographic reporter a sum sufficient to pay such fees as may be required by law. A copy of such request shall be sent to the stenographic reporter supervisor for the county. The stenographic reporter shall promptly prepare such transcript in accordance with the standards fixed by this court from time to time, and shall file the two copies of the transcript with the clerk of the court from which the appeal is being taken, notifying the attorney of each of the parties forthwith. * * *" (Italics ours)

The requirements of the rule are explicit. It is the appellant who is required to order a copy of the transcript from

the stenographic reporter, on or before the date of filing his notice of appeal; and it is the appellant who is required to pay the reporter a sum sufficient to cover the cost of the transcript. A certificate that this has been done must be endorsed on the notice of the appeal itself.

The fact that there is a cross-appeal in no wise changes the requirements of *R. R.* 1:2–8. *R. R.* 1:7–1 *et seq.* deal with briefs and appendices on appeal, and *R. R.* 1:7–12(*b*) relates specifically to a situation where there is a cross-appeal. Neither rule affects in the slightest the requirements of *R. R.* 1:2–8 relating to the preparation of the transcript by the appellant.

The appellant was early advised that the entire transcript could readily be prepared, and he was directed to deposit $2,200 to cover the cost of its preparation. Following the pattern that has characterized almost every phase of these proceedings, the Lanzas have managed, by one pretext or another, to postpone the preparation of the transcript and the payment of the required charges, and thus unwarrantably to delay the prosecution of this appeal.

Although we would be justified in dismissing the appeal for what appears to be calculated disregard of the rules, we only formalize hereby our order, made at the conclusion of the oral argument, that Silvio Lanza deposit with the stenographic reporter the $2,200 quoted as the cost of preparing the transcript. As directed at oral argument, this must be done on or before February 29, 1960.

We are informed that no deposit for costs has yet been made with the clerk of the appellate court, as required by *R. R.* 1:2–10. This deposit should also be made on or before February 29, 1960.

Failure to make the deposit for costs or to pay the stenographic reporter the $2,200 within the time specified will result in a dismissal of the appeal and supplemental appeal.