74 N.J. Super. 362 (1962)
181 A.2d 390
STATE OF NEW JERSEY, BY SALVATORE A. BONTEMPO, COMMISSIONER OF CONSERVATION AND ECONOMIC DEVELOPMENT, PLAINTIFF-RESPONDENT,
v.
SILVIO A. LANZA, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1961.
March 12, 1962.
Decided May 18, 1962.
*366 Before Judges CONFORD, FREUND and LABRECQUE.
*367 Mr. Jacob Green argued the cause for appellants (Mr. Donald M. Legow, on the brief).
Mr. Philip Lindeman, II, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Bernard Hellring, special counsel; Mr. Lindeman, Mr. Norman Bruck, and Mr. Philip L. Chapman, on the brief).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is a condemnation action commenced July 10, 1957 by the plaintiff State of New Jersey to acquire lands of defendant Silvio A. Lanza situated in the area commonly known as Round Valley, for purposes of constructing a water supply reservoir, pursuant to L. 1956, c. 60, N.J.S.A. 58:20-1 et seq. Among other defenses interposed by that defendant (hereinafter referred to as Silvio) was the contention that the enabling act was unconstitutional. This question was determined adversely to him in the Supreme Court on June 27, 1958. State v. Lanza, 27 N.J. 516 (1958). The United States Supreme Court dismissed an appeal from that ruling for lack of a substantial federal question. Lanza v. State, 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350 (1959).
Final judgment was entered in favor of the State in the Law Division November 27, 1957. An award of $38,425 for Silvio's interest was made by condemnation commissioners on February 27, 1958. An appeal from this award by Silvio was tried in the Law Division, consuming 22 trial days over the period from October 30, 1958 to July 6, 1959. The result was a 31-page opinion by the trial judge, wherein, after an exhaustive analysis of the evidence and opposing arguments, the sum of $57,623.93 was arrived at as "just compensation" for all of the property involved. An appropriate judgment was filed October 2, 1959. Of the two separate appeals now before us for disposition, one is from the said judgment.
*368 The second appeal before us is by Vito Lanza (hereinafter referred to as Vito), brother of Silvio, from certain orders entered in the Law Division, before and at the trial of the appeal, denying his application for intervention in the case as a party in interest. However, we granted Vito leave provisionally to participate in the appeal on the meritorious questions while prosecuting the intervention appeal, and he has been heard with respect thereto.

I.
We deal first with the intervention appeal. The circumstances surrounding Vito's acquisition of his interest in the property and attending the original denial of his claim to intervention by order dated August 1, 1958 are detailed in State v. Lanza, 60 N.J. Super. 130 (App. Div. 1959), and will not be repeated here. (The case cited was a dismissal of an earlier appeal by the Lanzas from orders of the Law Division, including the denial of intervention, because of inadequate prosecution of the appeal.) Suffice it here to say that Silvio, by deed dated June 24, 1958 and recorded June 30, 1958, conveyed an undivided one-tenth interest in the lands in question to Vito. In the earlier appeal Vito told the court the conveyance was in consideration of past advances to Silvio. No proof justifying a conclusion that this was not a valid instrument legally transferring the purported interest to Vito has ever been submitted to the court. We consequently treat Vito as owner of an undivided one-tenth interest in the real estate for purposes of the legal issue presented.
The motion for intervention was renewed before the trial judge at the inception of the trial as well as later in its course but was denied each time, finally by order dated September 29, 1959. However, Vito, who is a New York lawyer, attended all trial sessions and sat and consulted with trial counsel for Silvio continuously during the course of the trial. Moreover, he has advised Silvio and consulted with previous counsel for Silvio during the whole course of *369 the litigation. See State v. Lanza, supra (60 N.J. Super., at pp. 132, 133); State v. Lanza, 60 N.J. Super. 139 (App. Div. 1960). A petition for certification of our dismissal of the previous appeal was dismissed by the Supreme Court, but "without prejudice to the renewal of the grounds sought here to be raised on appeal from final judgment."
The State suggests that since Vito has had one opportunity to appeal the denial of intervention which he wasted by failure to prosecute the appeal, thereby incurring the dismissal mentioned above, he should not be accorded another opportunity. However, the language of the Supreme Court order dismissing the petition for certification of the dismissal suggests to us the advisability of disposing of the question so that this already excessively protracted litigation may be brought to a final termination.
We have concluded that Vito Lanza was entitled to intervention but that the denial of his application has not visited upon him and his property interests such prejudice as would justify nullification of the hearing and determination of the appeal in the Law Division respecting just compensation for the taking and incidental related issues.
The practice rules here applicable read as follows:
"4:37-1. Intervention of Right
Upon timely application anyone shall be permitted to intervene in an action: (a) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (b) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof; * * *."
"4:37-3. Permissive Intervention
Upon timely application any one may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."
"4:37-4. Procedure
A person desiring to intervene shall serve a motion to intervene upon all parties [affected thereby]. The motion shall state the *370 grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." (The bracketed portion was deleted by amendment of September 11, 1961.)
Of interest are also the following provisions of R.R. 4:92. Condemnation. R.R. 4:92-2 provides, in part:
"The record owner, the occupant, if any there be, such other persons appearing of record to have any interest in the property and such persons claiming an interest therein as are known to the plaintiff shall be made parties."
Under R.R. 4:92-6(c) an appeal from the report of the commissioners need be served "only * * * on parties or persons in possession and parties who have an interest in [the property] involved in the appeal and who shall have appeared personally or by attorney before the commissioners."
There is no specific practice rule governing intervention in a condemnation case. It is therefore to be assumed that R.R. 4:37 is intended to be applicable thereto. There is no New Jersey case directly in point. This condition of our practice may be contrasted with the comparable Federal Rules. Although our R.R. 4:37-1 (a), (b), 4:37-3 and 4:37-4 are basically derived from Federal Civil Rule 24, 28 U.S.C.A., yet the Federal Rules were from their adoption in 1938 expressly declared not applicable to condemnation proceedings except in relation to judicial appellate review. Rule 81(a)(7); see 7 Moore's Federal Practice (1955) p. 4417. There was no federal practice rule for condemnation until the adoption of Rule 71A, which became effective August 1, 1951. This makes the general rules of practice applicable to proceedings in condemnation except as specifically provided in Rule 71A. While that rule contains no express reference to intervention, the following provision of "(c) Complaint" thereof would appear in effect to justify allowance of intervention were a situation like that of Vito Lanza's presented to a federal court: "Upon the commencement of the action, the plaintiff need join as defendants only *371 the persons having or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, the plaintiff shall add as defendants all persons having or claiming an interest in that property whose names" are ascertainable by search of the records or are otherwise known.
In United States v. Certain Parcels of Land, etc., 102 F. Supp. 691 (W.D. Pa. 1952), involving condemnation as of prior to the adoption of Rule 71A, it was held that notwithstanding an application for intervention in condemnation was a matter of discretion under the then existing practice, yet one succeeding in interest to the realty after the declaration of taking, and asserting a claim for additional compensation and damages, should be allowed to intervene on principles of "justice and thorough administration of the law," since the proceeding from the declaration of taking through to distribution "is one continuous integrated process of litigation" (at p. 693). Cf. United States v. 1,830.62 A. of Land in Botetourt County, 51 F. Supp. 158 (W.D. Va. 1943); Oliver v. United States, 156 F.2d 281 (8 Cir. 1946).
Vito argues an absolute right to intervention under either (a) or (b) of R.R. 4:37-1, or, in the alternative, a discretionary right under R.R. 4:37-3. We confine our consideration and holding here to (b) of R.R. 4:37-1. In the broad sense, there was property, whether regarded as the land or the compensatory fund, in which he had a one-tenth undivided interest, and the quantum of compensation was within the determinative disposition of the court. As a part owner of the property, Vito clearly had sufficient interest in the attempt to increase the amount of the award by the appeal to the Law Division to warrant allowing him to participate in the crucial valuation proceedings thereafter as a party. Cf. Koppel v. Olaf Realty Corp., 56 N.J. Super. 109, 121 (Ch. Div. 1959), affirmed 62 N.J. Super. 103 (App. Div. 1960). The rule should be liberally construed, 2 Schnitzer and Wildstein, N.J. Rules Service, AIV-1184 (6-16-60), and cases there cited.
*372 The State argues the application was not timely. But it was made almost immediately upon Vito's acquisition of the deed. Moreover, being prior to the trial of the appeal, it was at a time when the most vital aspect of the proceeding was yet to come. Compare Federal Rule 71A(c), cited above. Nor does it appear that granting intervention at the time of the application would have entailed appreciable prejudice to the other parties or the court. See 2 Schnitzer and Wildstein, op. cit., supra, at AIV-1214 (6-16-60) and cases cited. See also Lieberman v. Neptune Twp., 50 N.J. Super. 192, 200 (App. Div. 1958). While there is a question as to whether there was strict compliance with the requirement of the rule for filing with the motion "a pleading setting forth the claim or defense for which intervention is sought," see State v. Lanza, supra (60 N.J. Super., at p. 136), we now conclude that substantial satisfaction of the intent of the rule was afforded, in view of the nature of the particular case, by the recital in the "notice of intervention" of joinder in the pleadings of Silvio Lanza.
While we thus agree that Vito should have been admitted as an intervenor when he applied in June 1958, we cannot accept the contention that the failure then to admit him aborts the judgment and requires a new valuation trial at which Vito may participate as a party in propria persona. We are satisfied that he was not substantially prejudiced. It is undenied, as noted above, that he was Silvio's close advisor and collaborator at all times in this entire litigation, before and after the denial of intervention. He participated in the hiring and discharging of the numerous attorneys who have represented Silvio herein at various times. He sat and conferred with Silvio's trial counsel at all times during the appeal hearing. Vito cites disagreements with counsel from time to time, alleging consequent hampering of full protection of both his and Silvio's rights; he also asserts that Silvio was ill when the valuation case was being prepared for trial. However, we are not convinced from the record before us that the case *373 would have gone substantially better for the Lanzas if Vito had appeared as a party in his own right rather than as the directing mind behind Silvio as defendant. We conclude the denial of intervention was not prejudicial error such as to justify a reversal.

II.
Defendants argue that the trial court's evaluation of their property, real estate as well as nursery stock, as taken by the State, is substantially below what the weight of the evidence of record called for. It is also contended that the court's conclusion as to the number of trees on the property was erroneous and unfounded. After a careful review of the testimony and exhibits we find no reason to disturb the trial findings in these respects. Fundamentally implicated here were matters of appraisal of the credibility and reliability of the opinions of expert witnesses, of credibility as to matters of fact involved in the testimony of witnesses, lay and expert, including the defendant Silvio Lanza, and questions as to the evidential weight to be accorded sales of allegedly comparable property. Such matters must ordinarily depend largely upon the trial judge's judgment as to the reliability and probative weight of evidence of this character. In the present case we have before us an extended opinion by the trial judge demonstrating an unusual degree of conscientious consideration of and reflection upon the proofs and a well-reasoned exposition of the several bases for the findings arrived at. He was at pains to express his specific impressions as to the credibility of named witnesses and to give his reasons. While we may not necessarily agree with all aspects of the evaluation of the proofs as stated in the opinion, we do not find the ultimate conclusions of fact and value vulnerable to anything set forth in the brief of the defendants or asserted on their behalf at oral argument. We concur in the adjudication in the Law Division of defendants' damages and loss in the sum of $57,623.93 substantially *374 for the reasons set forth in the opinion of the trial court.

III.
Defendants specifically attack the appointment by the trial court, over their objection, of an independent expert to count and testify before the court as to the number and value of trees (nursery stock) on the property. It is contended the trial judge was without authority to take this action. The witness so engaged testified subject to cross-examination by defendant.
At the time the court acted, prior to which defendants were given ample opportunity to be heard, and indeed were successful in their objections to the use of one such proposed expert, the court had heard testimonial estimates of the number and value of the trees varying from 2,250 trees worth $573, by a state expert, to 89,484 trees of a value of $259,728, by a defense expert. The trial court justifiably described this state of the proofs as "shocking in disparity as to the quantity, quality and value of the nursery stock." In this condition of the evidence the trial court was entirely within its proper judicial discretion in taking the initiative towards apprising itself of the findings and opinion of an independent expert on a matter so vital to a quest for the elusive truth of the matter. We approve and adopt the reasoning by Judge Gaulkin in Polulich v. J.G. Schmidt Tool Die & Stamping Co., 46 N.J. Super. 135, 146-149 (Cty. Ct. 1957), in support of the discretionary right of a trial judge to take such measures in an appropriate case, reasonably subject to an opportunity by all parties to be apprised of the identity of the expert witness in advance of his testimony, upon request, cf. R.R. 4:16-2, and of course to cross-examine as fully as in the case of a witness produced by the opposing side. See also State v. Butler, 27 N.J. 560, 600, 601 (1958); Band's Refuse Removal, Inc. v. Fair Lawn Bor., 62 N.J. Super. 522, 548 (App. Div. 1960), certif. denied 33 N.J. 387 (1960).
*375 Moreover, we do not agree with defendants' contention that the recent adoption of R.R. 4:25A, dealing with the appointment and use of medical experts in certain restricted situations, implies a blanket disapproval by the Supreme Court of the use of impartial experts in all other situations whatsoever. Even if we were to construe that rule as having such intent, it would clearly not be retrospective in effect so as to infect the validity of the adjudication before us here for review.
We conclude there was no error or mistaken exercise of discretion by the trial court in the matter here discussed.

IV.
The defendants argue that these condemnation proceedings are void in entirety in that the State failed to acquire the property within two years from the effective date of the original enabling act, L. 1956, c. 60 (N.J.S.A. 58:20-1 et seq.), or by June 1, 1958. That act provides that the Commissioner of Conservation and Economic Development "is authorized and directed to acquire, in the name of the State, within 2 years from the effective date of this act" such part of the Round Valley area deemed appropriate and useful for a new water supply system. As of June 1, 1958 the State had not yet tendered to defendant Silvio Lanza nor deposited into court the sum theretofore awarded by the condemnation commissioners, and therefore, under N.J.S.A. 20:1-12, the State had not yet become entitled to "take possession of the land" for the purposes for which it was authorized to be taken. The State does not now controvert the proposition that, accordingly, it had not yet by the date indicated "acquired" defendant's property.
The State contends, however, that it was amply warranted in proceeding to acquire the property, which it did later by payment of the award into court, under the authority of L. 1958, c. 57, which amended section 1 of the 1956 act, so far as is here material, by substituting the phrase "on *376 or before December 31, 1958" for the original specification of the time for acquisition, "within 2 years from the effective date of this act." The 1958 amendment, however, although passed by the Legislature May 19, 1958, did not become effective until June 12, 1958 because not approved by the Governor until then. Defendants contend that the expiration of the period stipulated for acquisition of the property on June 1, 1958 without any then existent legislative extender necessarily had the effect of killing the condemnation proceedings then pending without possibility of revival; and that the only effect of the 1958 act was to authorize the reinstitution of new condemnation proceedings from the beginning, to be capped thereafter by acquisition of the property on or before December 31, 1958. The State argues, on the other hand, that the intent and effect of the 1958 act was to validate the proceedings so far as they had progressed and to permit acquisition of the property at any time thereafter prior to December 31, 1958.
In support of their position defendants cite, among other authorities, State, Copeland, Pros. v. Village of Passaic, 36 N.J.L. 382 (Sup. Ct. 1873); Town of Belvidere v. Warren R.R. Co., 34 N.J.L. 193 (Sup. Ct. 1870); McLaughlin v. Newark, 57 N.J.L. 298 (Sup. Ct. 1894); and State, ex rel. Doyle v. City of Newark, 34 N.J.L. 236 (Sup. Ct. 1870). None of them supports their argument here. The first two cases cited deal with the effect of repealing statutes. There is no problem as to a repealed or repealing statute in the instant case. The expiration of the time stipulated in the 1956 act for acquisition of the property did not constitute a repeal or the equivalent of a repeal of the act. Even a repealing statute may be qualified in its ordinarily terminating effect on proceedings taken under the repealed act if the Legislature so manifests its intent in the repealing act. State, Copeland, Pros. v. Village of Passaic, supra (36 N.J.L., at p. 384). The McLaughlin case, supra, holds a statute cannot make itself operative as of a date prior to its enactment. But this *377 obviously does not affect the power of the Legislature, within constitutional limits, to legislate effect upon prior transactions. Retrospective legislation is commonplace. The Doyle case, supra, is cited by defendants for its dictum that the Legislature cannot revive an assessment previously held void by judicial judgment. There is no analogy here.
The question before us is simply one of legislative intent. When enacting L. 1958, c. 57, was it the intent of the Legislature to require the reinstitution ab initio of the State's condemnation proceedings against the Lanza property merely because the original two-year limitation period for acquisition of the property might transpire prior to such acquisition and the date of approval of the bill by the Governor, the bill having passed both houses by May 19, 1958 with a provision that it should take effect immediately? What rational purpose could the Legislature have had in mind, if, as defendants aver, it was intended that the Commissioner should file a new complaint and activate a new hearing before condemnation commissioners by mere virtue of a delay by the Governor in approving the amendatory bill beyond June 1, 1958? We perceive none, and defendants' argument points none out to us. They concede that if the bill had become effective on or before June 1, 1958, they would have no argument.
Defendants argue that legislation is presumed not to have retrospective effect unless the contrary intent is clearly manifest. We agree. But we do not agree that such intent is not here manifest, having regard not only for the statutory language but also for all the surrounding circumstances. Moreover, the 1958 act may properly be regarded as remedial in purpose and objective in enlarging the time period for acquisition of the property needed for the water supply project. In such case the presumption is rather for retrospective than for solely prospective effect, absent a clear indication of contrary intent. Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 382 (1954). While the latter rule is usually stated as applicable *378 "in cases pending when it takes effect," id., at p. 381, this is merely because the situation usually arises in that context. There is no good reason (we consider the constitutional implications infra) why the rule as to presumptive retrospective effect of remedial legislation should not apply here notwithstanding the temporary lapse of condemnatory power on June 1, 1958, if the presumption plainly accords with the indicia of actual intent, as here it does.
L. 1958, c. 57 originated as Senate Bill 189, introduced April 21, 1958. The measure passed the Senate April 28, 1958 and the House of Assembly May 19, 1958, under an emergency resolution. The Legislature may be assumed to have been aware of all facts affecting the subject matter of the legislation, including the impending expiration on June 1, 1958 of the time previously limited for acquisition of property for the Round Valley water project. The Lanza litigation was particularly well known at the time, as there was then pending, as noted above, an attack upon the constitutionality of the enabling act which was decided favorably to the State by the Supreme Court on June 27, 1958 (27 N.J. 516) after a long and troublesome litigation. As was stated in State v. Spindel, 24 N.J. 395, 402, 403 (1957):
"There is no discernible reason of policy for abstract legalism in evaluating the legislative expression. The reason of the enactment prevails over the literal sense of terms. Fischer v. Fischer, 13 N.J. 162 (1953); Wright v. Vogt, 7 N.J. 1 (1951). The manifest policy of a statute is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. Wene v. Meyner, 13 N.J. 185 (1953). The occasion and necessity of the law, the mischief felt and the remedy in view are the factors to be considered in the exercise of the interpretive function; and the intention is to be taken or presumed according to what is consonant to reason and good discretion."
To infer that the Legislature actually intended a waste of all the time, effort and expense which had been incurred by both the State and the Lanzas in the condemnation proceedings up to June 1, 1958 in the contingency that the *379 Governor should withhold approval of Senate Bill 189 until after June 1, 1958, is to fly in the face of reason. The only sensible reconstruction of the lawmakers' intent as to the effect of the anomalous situation which here came about by reason of the delay in approval of the bill is that any condemnation proceedings pending on June 1, 1958 were to be accorded renewed vitality subject to acquisition of the property by the State by December 31, 1958. We so hold. This result is in accord with the decision of the Indiana Supreme Court in a fairly parallel situation. Milk Control Board v. Pursifull, 219 Ind. 49, 36 N.E.2d 850 (Sup. Ct. 1941). The court there declined to permit a comparable delay in effectuation of an extender bill to "thwart the purpose and intention of the Legislature." (36 N.E.2d, at p. 851.) Cf. Fenolio v. Sebastian Bridge Dist., 133 Ark. 380, 200 S.W. 501 (Sup. Ct. 1917); State v. Bailey, 56 Kan. 81, 42 P. 373 (Sup. Ct. 1895); Kersten v. United States, 161 F.2d 337 (10 Cir. 1947), cert. denied 331 U.S. 851, 67 S.Ct. 1744, 91 L.Ed. 1859 (1947).
Defendants cite the introducer's statement appended to Senate Bill 189 as evidence that the only purpose of the bill was to permit the Commissioner to acquire five small parcels of land whose owners could not be located. The statement also recites: "The acquisition of all other land has been completed." The statement is relevant evidence as to the legislative intent, but "a considered judgment must be exercised in determining the weight to be attached to it." Morris & Essex Invest. Co. v. Director of Div. of Taxation, 33 N.J. 24, 34 (1960). The stated intent of the introducer must here be accorded little weight in view of his obvious misinformation as to the fact that the Lanza property had not yet actually been acquired. We are not permitted to assume that the Legislature as a whole was equally without knowledge of the facts.
Defendants urge that if we accept the State's contention as to the effect of L. 1958, c. 57, the result would be to deprive them of their property without due process *380 of law. We do not agree. Everything which had been done in the course of the condemnation proceedings up to June 1, 1958 was done in full accord with the law and with constitutional principles. The revival of the proceedings after the 11-day hiatus had only the practical effect upon the defendants of permitting the State to take possession of the property upon tendering or paying into court the amount of the condemnation award theretofore made in proceedings of which they had had full notice and an opportunity to participate. (Vito's rights as an intervenor were subject to the status of the proceedings as they stood as of the time of his petition, filed June 26, 1958; Wolpe v. Poretsky, 79 U.S. App. D.C. 141, 144 F.2d 505, 508 (D.C. Cir. 1944), cert. denied 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944). He therefore has no special basis to complain he was deprived of a hearing before the commissioners.) Defendants still retained, unimpaired, the right of appeal of the amount of the award in the Superior Court, and we have held above they both have, in effect, been accorded the benefit of it. They have sustained no deprivation of their property without due process in any significant or substantial sense of that term. The Lanzas do not demonstrate that the nature of their rights on June 2, 1958 was such that to accord chapter 57 the effect we have adjudicated would constitute "arbitrary state action" against a then "present fixed interest" contrary to principles of "right reason and natural justice." See Pennsylvania Greyhound Lines, Inc. v. Rosenthal, supra (14 N.J., at p. 384).
Other grounds of appeal argued have been given consideration and are found without merit.
Judgments affirmed; costs to go in the usual course, except that no costs are allowed as to the intervention appeal.