137 N.J. Super. 464 (1975)
349 A.2d 545
TOWNSHIP OF WAYNE IN THE COUNTY OF PASSAIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
EDWARD CASSATLY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1975.
Decided November 24, 1975.
*468 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Michael A. Cerreto and Mr. Leon A. Consales argued the cause for defendant-appellant (Messrs. Cerreto & LaPenna, attorneys).
Mr. Michael K. Diamond argued the cause for respondent-cross-appellant (Messrs. Diamond, Diamond and Afflitto, attorneys).
PER CURIAM.
On July 20, 1970 plaintiff Wayne Township, in connection with its urban renewal program, instituted the present condemnation proceeding to acquire 21.3 acres of a larger tract of land owned by defendant and located in Wayne Township near the Willowbrook shopping complex. The condemnation commissioners awarded defendant $1,250,000 for the taking, which included damages to the remaining tract, a parcel slightly in excess of 18 acres. Both parties appealed this award to the Superior Court, and between the date of the commissioners' award and the trial in the Superior Court the new Eminent Domain Act became effective. N.J.S.A. 20:3-1 et seq. In accordance therewith, and on application of defendant, the trial judge ordered plaintiff to acquire the remaining 18-acre parcel, an uneconomic remnant. N.J.S.A. 20:3-37. The matter thereafter proceeded as if this order had been complied with.
Several months before trial plaintiff moved for the appointment of an independent appraiser because of the wide disparity (over a million dollars) between the valuations of plaintiff's and defendant's experts. The granting of plaintiff's application and the testimony of the court-appointed appraiser provides one of the grounds of the present appeal.
At the trial plaintiff's expert valued the property taken as of July 20, 1970 at $2,036,000; defendant's two experts valued it at $3,328,000 and $3,110,000; the court's expert, called by plaintiff, valued it at $2,155,000. The jury returned a verdict of $2,270,000 and the judge awarded prejudgment *469 interest at 7% on the excess over the amount previously deposited by plaintiff, calculated from the date the action was commenced.
Defendant's contention on appeal that the trial judge mistakenly exercised its discretion in acceding to plaintiff's request for the appointment of an independent expert, is without merit. The large disparity in the valuations of the experts, suggesting undue partisanship, provided ample basis, for the action taken. State v. Lanza, 74 N.J. Super. 362, 374 (App. Div. 1962), aff'd 39 N.J. 595 (1963), app. dism. 375 U.S. 451, 84 S.Ct. 525, 11 L.Ed.2d 477 (1964), reh. den. 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964); Wayne Tp. v. Kosoff, 136 N.J. Super. 53 (App. Div. 1975); Jersey City Redev. v. Weisenfeld, 124 N.J. Super. 291, 294-295 (App. Div. 1973), certif. den. 63 N.J. 563 (1973). All parties were apprised of the identity of the court-appointed expert in advance of his testimony, and after his direct testimony on behalf of plaintiff (by whom the independent expert was called) defendant was afforded full opportunity of cross-examining him. State v. Lanza, supra, 74 N.J. Super. at 374. Nor do we perceive error by the trial judge in advising the jury that the independent expert was appointed by the court, a procedure sanctioned by court rule in analogous circumstances. R. 4:20-10. Where a judge sits as fact-finder, he has knowledge that the expert appointed by him testifies free from the influence of interest in favor of either side; no reason appears why a jury sitting as fact-finder should be less well-informed, particularly where, as here, they are instructed to make their own independent evaluations of the weight to be accorded the testimony of the court appointed expert. See Wayne Tp. v. Kosoff, supra.
Defendant next contends, without merit, that the trial judge erroneously excluded several sales referred to as comparable by his expert witnesses while admitting evidence of a sale (at plaintiff's behest) concerning land defendant contends could not properly be deemed comparable to the *470 land being condemned. One of the excluded sales was offered by an expert who had previously testified to four others of substantial comparability. This excluded comparable sale offering really consisted of two sales separated by about nine months. One sale involved somewhat over ten acres, and the other in excess of eight acres. (The subject property consists of almost 40 acres.) The offered sale concerned property in a different municipality, with different zoning, and was located approximately 3 1/2 to 4 miles east of the subject property. The expert freely admitted that of the five comparable sales referred to in his testimony, he placed the least reliance on the one which was subsequently excluded. We conclude that exclusion of this sale fell well within the proper scope of the trial judge's discretion. Ocean Cty. v. Landolfo, 132 N.J. Super. 523, 528 (App. Div. 1975); Moorestown Tp. v. Slack, 85 N.J. Super. 109, 114 (App. Div. 1964), certif. den. 43 N.J. 452 (1964).
The other excluded sales were of parcels located in other municipalities and counties, at substantial distance from the subject property, and had as their only similarity the fact that they were located near major shopping centers. The excluded sales concerned the following parcels of land: (1) an eight-acre tract in Woodbridge, 22 miles from the subject property; (2) property in Menlo Park, also about 22 miles from the subject property, with its only similarity to the subject property being its proximity to a major shopping center; (3) a 2 1/2-acre tract in Paramus located about 10-12 miles from the subject property; (4) a ten-acre parcel in East Paterson about three miles from the subject property. In our view, the proffered sales concerned property so dissimilar in location and size that few rationally probative valuation inferences could be drawn from them by the jury, and their exclusion did not, particularly where sales of other comparable property were available and admitted, constitute a mistaken exercise of the trial court's discretion. Moorestown Tp. v. Slack, supra.
*471 Admitting the Totowa-Wayne Airport to Pet Needs, Inc. sale, offered by plaintiff, fell within the proper bounds of the trial judge's discretion. Although there were dissimilarities, the property was similar in size, zoning, and physical land features to the subject property, and this, together with the expert's statement that it influenced him greatly in arriving at his valuation, properly caused the trial judge to exercise his discretion in favor of admitting it. No mistaken exercise of discretion has been shown. Ocean Cty. v. Landolfo, supra.
The most troublesome aspect of this case concerns the rate at which interest was calculated on the compensation awarded defendant. The State contends that interest should have been calculated at the traditional 6% rate; defendant property owner contends it should have been higher than the 7% rate allowed and proffered evidence of legal and commercial rates of interest prevailing in the community during the period of detention to establish the higher rate of return available during that period. After initial consideration of the advisability of an evidentiary hearing, the trial judge rejected that course of action, and fixed the rate at which interest was to be calculated at 7%. No reasons were given for adopting that rate.
The allowance of interest on an award of condemnation is a requirement of constitutional magnitude where the actual taking of the property is not contemporaneous with payment therefor. Interest is thus regarded as part of the condemnee's constitutional right to just compensation. State by State Highway Com'r v. Seaway, Inc., 46 N.J. 376, 381 (1966); N.J. Highway Authority v. Ellis, 24 N.J. 1, 7 (1957). This right has been implemented by statute (N.J.S.A. 20:3-31) which requires the judge, rather than the jury, to fix and determine the amount of interest whenever the parties are unable to agree. N.J.S.A. 20:3-32 provides:
Unless agreed upon by the parties, the amount of such interest shall be fixed and determined by the court in a summary manner *472 after final determination of compensation, and shall be added to the amount of the award or judgment, as the case may be.
Neither the former Eminent Domain Act, nor the present one which became effective December 21, 1971, explicitly set forth the rate of interest allowable on condemnation awards, although N.J.S.A. 27:7-22, the provision dealing with condemnation for highway purposes, continues to specify at 6% rate of interest in highway condemnation cases. In Hoboken Housing Auth. v. Segal, 112 N.J. Super. 359, 365 (App. Div. 1970), a case decided before enactment of the above-quoted provision, the trial judge fixed the interest rate at 6% in a nonhighway case because specification of the rate in highway condemnation cases was deemed indicative of legislative intent with respect to the appropriate rate of interest in condemnation cases generally. N.J.S.A. 20:3-32, the new provision governing disposition of this issue, however, expressly provides the judge with flexibility in determining the appropriate interest rate in a given case and seems to implement the view that the awarding of interest is best considered on a case-by-case basis rather than by reference to rigid guidelines in order to determine compensation which is "just." State v. Nordstrom, 54 N.J. 50 (1969).
The present condemnation action was instituted on July 10, 1970 and interest is therefore to be calculated from that date on the final award. To be deducted therefrom is interest on any amounts previously deposited in court from the date of such deposit. Interest is to be allowed, however, on the amount thus deposited before the deposit is made but after suit is instituted. N.J.S.A. 20:3-31; N.J.S.A. 20:3-32. Jersey City v. Realty Transfer Co., 129 N.J. Super. 570 (App. Div. 1974), aff'd o.b. 67 N.J. 104 (1975).
Contrary to prior experience, interest rates in recent years have undergone relatively rapid changes generally in an upward direction. The changes in the legal rate, that is, the rate permitted to be contracted under the usury statute, are illustrative. Busik v. Levine, 63 N.J. 351, 356 *473 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). Although N.J.S.A. 31:1-1, as amended by L 1968, c. 55, § 1, retained the 6% legal rate, it allowed for its upward revision to no more than 8% by the Commissioner of Banking and Insurance (later the Commissioner of Banking) with the advice of a special advisory board. Pursuant to this authority the Commissioner increased the legal rate to 8% for loans made on or after April 16, 1970 (2 N.J.R. 38(a)). Hence, on the date the complaint commencing the present litigation was filed, July 20, 1970, the legal rate of interest was 8%. On April 7, 1971, a little less than a year later, he decreased the rate to 7 1/2% (3 N.J.R. 74(a)), and for loans made after July 16, 1973 (5 N.J.R. 258(b)) the rate was again increased to 8%, where it has since remained except for loans secured by real property on which one, two or three-family homes are to be erected for use of the borrower and except for loans in excess of $50,000.[1]
Despite the mandated flexibility of the legal rate of interest incorporated into N.J.S.A. 31:1-1 in 1968 and the subsequent rises and fluctuations of the interest rate thereafter, interest allowable by court rule on judgments and awards remained at the 6% level until April 1, 1975 when that rate was raised to 8%, a rate consistent with the presently prevailing legal rate. R. 4:42-11(a). Allowances of prejudgment interest are also calculated at the legal rate. R. 4:42-11(b). Interest on deposits in court, previously set at 6%, was expressly left open by rule amendment of April 1, 1975, to be thereafter fixed at intervals by the Chief Justice. R. 4:57-5.
Notwithstanding that a 6% interest rate still obtains in highway condemnation matters, N.J.S.A. 27:7-22, (but see N.J.S.A. 20:3-2, N.J.S.A. 20:3-50), the *474 State has advanced no persuasive authority in support of its contention that the interest rate should be fixed at no more than 6% except to point to cases in which interest was assessed at that rate. See, e.g., Hoboken Housing Auth. v. Segal, supra. In light of the fact that the legal rate was abandoned in favor of an 8% rate before institution of the present action, and common knowledge as to rising interest rates during the pendency of the present matter, reflected in both court rules and statutes, there seems no justification for crediting the State's assertion that an allowance of a 6% interest rate complies with the constitutional standard for just compensation.
The question remains, however, if it is not to be 6%, what standard should guide the trial judge in determining that rate of interest which will best meet the constitutional requirement of just compensation? Since rigid guidelines do not suffice and since the governing statute envisions a flexible approach, we start with the proposition that the appropriate rate of interest cannot be determined by an uninformed judge. Where, as here, the action has been pending for a substantial period of time in which the level of interest rates has been a changing phenomenon, a hearing should have been held during which expert evidence as to prevailing commercial and legal rates of interest would have been received. The statutory requirement that the rate of interest be determined "in a summary manner" does not necessarily imply a proceeding devoid of evidential input. After receiving evidence as to prevailing commercial interest rates, the prime rate or rates, and bearing in mind the applicable legal rates of interest, which should certainly be regarded as highly evidentiary (Jersey City v. O'Callaghan, 41 N.J.L. 349, 354 (E. & A. 1879)), the judge should then select that rate or rates of interest which will best indemnify the condemnee for the loss of use of the compensation to which he has been entitled from the date on which the action for condemnation was instituted, less interest on all amounts previously deposited from the *475 date of deposit. If no evidence is given as to the prevailing commercial rate, the court may conclude that the legal rate of interest reflects that rate,[2] although the landowner is not entitled as a mattor of right in all cases to an allowance of interest at the maximum legal rate. The interest rate selected should not, however, exceed the legal rate. Bergen Cty. Sewer Auth. v. Little Ferry, 15 N.J. Super. 43, 52 (App. Div. 1951). See also, Waugh v. Commonwealth, 394 Pa. 166, 146 A.2d 297 (Sup. Ct. 1958); Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923); City of Buffalo v. J.W. Clement Co., 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (Ct. App. 1971); Annotation, 36 A.L.R. 2d 337 at 436.
Defendant's contention that evidence of cost of living, reflecting diminution of the value of the dollar during the pendency of the action, should have been received during this hearing is clearly without merit. The rate of interest selected by the court is designed to compensate the landowner for the detention of moneys owed him during the pendency of the action and put him in the same position he would have been in had he been paid in full on the date the action was commenced. Consideration of the decrease in the value of the dollar during that interim in addition to an interest award would result in overcompensation.
*476 The judgment as to the valuation of the property taken is affirmed, and the matter remanded for a hearing concerning the appropriate rate of interest and further proceedings consistent with this opinion.
NOTES
[1] The interest rate on mortgages has risen from 8 3/4% on December 21, 1973 (6 N.J.R. 50(b)) to 9% on June 11, 1974 (6 N.J.R. 255 (b)) to 9 1/4% on January 30, 1975 (7 N.J.R. 94(b)).
[2] This would not be an unreasonable conclusion since N.J.S.A. 31:1-1 requires the Commissioner of Banking and the special advisory board to take into account the following factors in determining the legal rate of interest: "* * * the general state of the economy, the discount rates prescribed by the Federal Reserve Bank of New York and the Federal Reserve Bank of Philadelphia, the advance rate as prescribed by the Federal Home Loan Bank of New York, the availability of funds for loans, studies and statistics published by the Federal Home Loan Bank Board and other agencies of the United States and of this State, and such other factors and bases for determination as the commissioner and the board may deem pertinent. * * *"