TOWNSHIP OF WAYNE IN THE COUNTY OF PASSAIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MARVIN KOS-OFF AND LEON A. CONSALES, DEFENDANTS-APPELLANTS.

Argued September 27, 1976—Decided February 14, 1977.

*Mr. Michael A. Cerreto* argued the cause for defendants-appellants (*Messrs. Cerreto & La Penna,* attorneys).

*Mr. Michael K. Diamond* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by
SULLIVAN, J. Certification was granted in this condemnation proceeding to review the judgment of the Appellate Di-

vision (see 136 *N. J. Super.* 53 (1975)), which held that there can no longer be any doubt but that a trial court possesses the inherent power to appoint an independent expert in a condemnation case as an aid in its "quest for the elusive truth of the matter," and that the trial court herein mistakenly exercised its discretion in denying plaintiff's motion for the appointment of such an expert. We affirm the Appellate Division holding as to a trial court's inherent power to appoint an independent expert, but disagree with its finding that the trial court abused its discretion in the circumstances presented. We therefore reverse the judgment of the Appellate Division and reinstate the judgment of the trial court, including its computation of interest.

The basic facts of the case were summarized by the Appellate Division as follows, 136 *N. J. Super.* at 55–56:

Plaintiff instituted condemnation proceedings on June 7, 1970 in order to acquire a 3.3-acre portion of a larger tract of vacant land owned by defendants and located within the Township of Wayne in an area designated as an urban renewal plan by the township and the Department of Housing and Urban Development. On April 15, 1971 the condemnation commissioners filed their report awarding defendants $372,250 for the taking, which amount included damages to the remaining tract, a parcel slightly in excess of four acres. Plaintiff and defendant both appealed this award to the Superior Court, Law Division. Several months after the matter was first listed for trial, the Eminent Domain Act of 1971, *N. J. S. A.* 20:3-1 *et seq.*, became effective. The new act afforded the property owner, subjected to a partial taking, the right to compel condemnation of the remaining property where the remainder has "little or no economic value." *N. J. S. A.* 20:3-37. In the exercise of this new right defendants, in April 1972, obtained an order requiring plaintiff to acquire the remaining four-acre parcel. The Department of Housing and Urban Development, however, expressed reluctance to finance this additional purchase since the four-acre parcel fell outside the boundaries of the urban renewal plan. As a result plaintiff attempted, through a series of applications, to delay trial of the condemnation suit until some decision was made by the Department of Housing and Urban Development as to payment therefor. An unsuccessful attempt at relief in the federal courts was made.

At any rate, shortly before the case was finally tried plaintiff filed a motion for an order appointing an independent appraiser inasmuch as there was nearly a half million dollars difference between the amount offered by plaintiff and the amount sought by defendants.

Plaintiff's motion was denied on the ground that it had been interposed primarily for purposes of further delay. Moreover, the trial judge expressed concern as to the proper procedure in presenting the testimony of an independent or court-appointed appraiser to a jury. It is the denial of the motion that provides one of the principal grounds of this appeal.

At the time the motion was made, and for a substantial period of time prior thereto, the parties were aware of a wide disparity between the appraisals made by the parties' respective expert witnesses. Plaintiff's appraiser placed a value of $490,000 on the subject property. Defendants' appraiser valued it at $937,250, the precise value accepted by the jury in its verdict. * * *

We note only these additional facts. On July 29, 1971 plaintiff had filed a declaration of taking as to the original 3.3 acres and deposited in court $134,300, the es-timated value of the land taken. Thereafter, on August 23, 1972 plaintiff deposited in court an additional $237,950 in order to bring the amount of the deposit up to the award of $372,250 made by the condemnation commissioners. Defendants promptly obtained court orders allowing them to withdraw these deposits.

It is obvious that because of the enlarged taking ordered by the trial court in April 1972, plaintiff experienced considerable difficulty in securing federal financing for the additional acreage. However, for a substantial period of time prior to making its motion plaintiff had been aware of the wide disparity between the appraisals as to value made by the parties' respective experts. Nevertheless, it took no steps towards having an independent expert appointed by the court until the very eve of a final, peremptory trial date. The granting of this motion would, of course, have required further adjournment of the case.

The action of the trial court in denying plaintiff's motion must be viewed in light of the circumstances existing at the time. The case was four years old. It had received numerous trial dates, many of them on a peremptory basis in an effort to bring the matter to trial. Finally, when it was rescheduled for April 23, 1974, again on a peremptory basis, plaintiff, on April 19, moved to have an independent and neutral

expert appointed by the court to the end that his opinion and testimony would be available at trial. As noted, this would have required further adjournment of the trial. The trial court regarded this "eleventh hour" application as "nothing more than a dilatory tactic" and denied it saying that "if counsel really wanted an impartial expert appointed, an application for the same should have been made months ago."

It cannot be said that the trial court's ruling was erroneous in these circumstances. Plaintiff's financial problems, serious as they may have been, were unrelated to the preparations for trial. No question of abandonment of proceedings under *N. J. S. A.* 20:3–35 was involved since plaintiff had filed a declaration of taking in the cause as to the original tract and it had been judicially determined that the balance of the tract was an uneconomic remnant which must be included in the taking. Accordingly, we disagree with the Appellate Division's holding that the trial court had mistakenly exercised its discretion in denying plaintiff's motion.

However, had plaintiff's motion been made at a time when further delay of the peremptory trial date would not have resulted, it might well have merited approval. New Jersey does not have a statute similar to the Uniform Expert Testimony Act which permits a court to appoint expert witnesses in civil or criminal proceedings. Our only court rule on the subject, *R.* 4:20–1 *et seq.,* is limited to the appointment of medical experts. Though our Rules of Evidence are taken from the Uniform Rules of Evidence, they do not include Rules 59, 60 and 61 which provide for court appointment of expert witnesses.

However, it is settled in this State that a trial court possesses the inherent power to appoint an independent expert in a condemnation case as an aid to ascertaining the truth. See *Jersey City Redevelopment Agency v. Weisenfeld,* 124 *N. J. Super.* 291 (App. Div.), certif. den. 63 *N. J.* 563 (1973); *State v. Lanza,* 74 *N. J. Super.* 362 (App. Div. 1962), aff'd 39 *N. J.* 595 (1963). *Cf. Polulich v. J. G.*

*Schmidt Tool, Die & Stamping Co.*, 46 *N. J. Super.* 135 (Essex Cty. Ct. 1957). *Cf. Handleman v. Marwen Stores Corp.*, 53 *N. J.* 404 (1969). Text writers and commentators have uniformly endorsed this concept. 9 *Wigmore, Evidence* (3d ed. 1940), § 2484 at 267–270; *McCormick, Evidence,* §§ 8, 17 (2d ed. 1972); Note, Judicial Authority to Call Expert Witnesses, 12 *Rutgers L. Rev.* 375, 383–388 (1957).

It may be that the subject should be incorporated in a court rule, or rule of evidence as has recently been done by Rule 706 of the *Federal Rules of Evidence.* This would have the advantage of spelling out standards to be applied and procedure to be followed. We recommend that our Civil Practice Committee consider the question. Of course, the same result can also be achieved by statutory enactment. See for example, *Cal. Evid. Code* §§ 730–733; *Ill. Rev. Stat.,* c. 110A, § 215 (d); *La. Code Civ. Proc. Ann.,* art. 192.

██ Whether or not the power to appoint an impartial expert in a condemnation case should be exercised either by the court *sua sponte* or on application of one or more of the parties, would depend on the circumstances presented. However, where it appears that the trier of the facts will be confronted with extraordinarily disparate opinions as to valuation, and a timely motion for the appointment of an independent expert is made, the trial court should seriously weigh the possible advantage of an impartial expert.

Such disparate opinions as to value may be indicative of undue partisanship on the part of one or more of the experts. Since a jury ordinarily lacks sophistication or experience in these matters, it can become confused or be misled by these opinions. Therefore, recourse to an expert who is free of any possible taint of partisanship, could prove of inestimable value in the "quest for the elusive truth of the matter." *State v. Lanza, supra,* 74 *N. J. Super.* at 374.

██ The decision as to whether or not an impartial expert should be appointed in a condemnation proceeding is ordinarily left to the sound discretion of the trial court. It has the advantage of personal and direct confrontation with the

parties, the issues and proofs. Its superior ability to evaluate the need for, as well as the availability of, an impartial and qualified expert in a particular situation should be given great weight.

Absent a controlling statute or rule, when a trial court acts to appoint an independent expert, certain procedures should be followed. The identity of the expert should be promptly disclosed to all parties. The expert should be directed to prepare an appraisal and report setting forth his opinion as to value and the basis thereof. Copies of this report should be submitted to all parties in advance of the trial.

When the matter comes on for hearing, and following the completion of the submission of proof by the parties, the trial court should have the independent expert testify. The court should first explain to the jury that it has selected the independent expert to aid the jury in ascertaining the truth, but that such expert's testimony is not to be given special weight or consideration because of that fact. (This admonition should be repeated in the charge to the jury.) To the extent necessary, the trial court should examine the independent expert as to opinion of value and the basis thereof, counsel for the respective parties, of course, having the right of cross-examination. The independent expert's fee should be paid by the parties as directed by the court.

The foregoing are intended as general principles only. Details and application must be left to the sound discretion of the trial court in the light of the circumstances presented.

The Appellate Division, since it concluded that the trial court's refusal to grant plaintiff's motion for the appointment of an independent expert was reversible error, found it unnecessary to consider two other grounds also urged by plaintiff to be reversible error. We find neither of these additional grounds to have substance.

The first is that the trial court erred (a) in allowing into evidence testimony as to certain sales offered by defendants which the trial court found to be within the scope of comparability, and (b) excluding evidence of two sales

proffered by plaintiff on the ground they were not comparable. The trial court is vested with wide discretion in passing upon the question of comparable sales. It has not been shown to have been abused in the particulars alleged.

Plaintiff also argues, as plain error, that the trial court's charge was ambiguous and could have led the jury to believe that it had to accept the exact figures of the expert of whichever party met its burden of proof. The portion of the charge claimed to have this capacity reads:

> In order for you to render a verdict it is the duty and obligation of the respective parties to prove the market value of the premises involved by the greater weight of the evidence. When we say greater weight of the evidence we do not necessarily mean the greater number of witnesses on one side or the other. We refer to the quality rather than to the quantity of the proof. We mean the believable testimony as measured by its weight and not by its quantity.

We agree with the trial court's conclusion in denying plaintiff's motion for a new trial that the jury was not misled by the foregoing instructions.

Finally, we consider the computation of interest on the condemnation award as made by the trial court and allowed to defendants. Essentially the trial court allowed defendants 6% interest on the full jury verdict of $937,250 from the date of the filing of the complaint on June 4, 1970 until payment, excepting from the computation the sum of $134,-300 from the date such sum was deposited in court by plaintiff on July 29, 1971 as well as the additional sum of $237,950 from the date such additional sum was deposited in court by plaintiff on August 23, 1972.

Plaintiff contends that had the statutory provisions regulating interest been followed as outlined in *Township of Wayne v. Ricmin Inc., et al.,* 124 *N. J. Super.* 509 (App. Div. 1973), interest would have been allowed only on the amount of the condemnation award in excess of "all moneys deposited" in court and then only "from the date of the deposit" and not the date of the filing of the complaint.

Although *Wayne, supra,* so holds, we conclude that this is an erroneous interpretation of the statutory provisions which in pertinent part provide:

*N. J. S. A.* 20:3–23. Withdrawal of funds

Upon application of any condemnee * * * the court may direct that the estimated compensation on deposit, or any part thereof, be paid to the person or persons entitled thereto, on account of the compensation to which they may be entitled in the action; provided, * * * and provided, further, that if the award or judgment fixing such compensation be more than the amount deposited, condemnor shall pay the excess to the condemnee entitled thereto, with interest at a rate to be fixed by the court *from the date of the deposit,* * * *. (Emphasis added.)

*N. J. S. A.* 20:3–31. Payment of interest

Interest as set by the court upon the amount of compensation determined to be payable hereunder shall be paid by the condemnor from the date of the commencement of the action until the date of payment of the compensation; provided, however, that there shall be excluded from the amount upon which interest shall be calculated, all moneys deposited pursuant to Article V hereof; * * *.

The foregoing provisions must be read *in pari materia* with *N. J. S. A.* 20:3–30. This section fixes the date as of which compensation is to be determined and provides:

Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee.

Since the legislative purpose is that compensation shall be determined at least as of the date of the commencement of the action, it follows that the allowance of interest should be made on the same basis, with moneys deposited in court pursuant to the act to be excluded from the computation as of the date of deposit. This was the holding in *City of Jersey City v. Realty Transfer Co.,* 129 *N. J. Super.* 570 (App. Div. 1974) which was summarily affirmed by this Court. 67 *N. J.* 104 (1974).

Accordingly, the judgment of the Appellate Division is hereby reversed and the judgment of the trial court, including computation of interest, is reinstated. No costs.

*For reversal* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD — 7.

*For affirmance*—None.