722 A.2d 949 (1999)
317 N.J. Super. 584
CASINO REINVESTMENT DEVELOPMENT AUTHORITY, a public corporate body of the State of New Jersey, Plaintiff-Respondent/Cross-Appellant,
v.
Walter J. HAUCK and Virginia Hauck, husband and wife, Defendants-Appellants/Cross-Respondents,
and
State of New Jersey, National Westminster Bank, John Doe(s), an unknown claimant(s), fictitious name(s), who is (are) or may be tenant(s), City of Atlantic City and Atlantic City Municipal Utilities Authority, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1998.
Decided January 4, 1999.
*950 Peter H. Wegener, Lakewood, for defendants-appellants/cross-respondents (Bathgate, Wegener & Wolf, attorneys; Mr. Wegener, of counsel; Peter G. Licata, Ridgefield, on the brief).
Paul V. Fernicola, Middletown, for plaintiff-respondent/cross-appellant (Giordano, Halleran & Ciesla, attorneys; Mr. Fernicola, on the brief).
Edward D. McKirdy, Morristown, for intervenor Yvette Nierenberg (McKirdy & Riskin, attorneys; Mr. McKirdy, on the brief).
Richard L. Rudin, Parsippany, for intervenor Township of West Windsor (Weiner, Lesniak, attorneys; Mr. Rudin, on the brief).
George P. Ljutich, Deputy Attorney General, on behalf of intervenor State of New Jersey (Peter Verniero, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Mr. Ljutich, on the brief).
Before Judges BAIME, CONLEY and A.A. RODRíGUEZ.
The opinion of the court was delivered by BAIME, P.J.A.D.
The Eminent Domain Act of 1971, N.J.S.A. 20:3-1 to -50, provides three alternative valuation dates: the date the condemnor takes possession of the property, N.J.S.A. 20:3-30(a); the date on which the condemnation action is commenced, N.J.S.A. 20:3-30(b); and the date on which action is taken by the condemnor which substantially affects the condemnee's use and enjoyment of the property, N.J.S.A. 20:3-30(c). Just compensation is determined by the value of the property as of the earliest of these dates. N.J.S.A. 20:3-30. At issue is whether interest on a condemnation award runs from a date of valuation which is triggered by something other than an actual taking or the filing of a condemnation complaint. Ancillary issues concern the appropriate rate of interest on a condemnation award. We hold that interest on a condemnation award runs from either the date of commencement of the action or the date of actual taking, whichever is earlier. We also conclude that the interest rates set by R. 4:42-11 may be applied to a condemnation *951 award depending upon the period of time in which the condemnation action was pending, the extent to which commercial interest rates fluctuated, and other relevant factors.

I.
The salient facts are not in dispute. In May of 1991, the Casino Reinvestment Development Authority announced its plans to proceed with its northeast inlet redevelopment project. Walter and Virginia Hauck owned six contiguous lots within the project area. Situated on the lots were two single-family residences, vacant land, and a commercial building in which the Haucks operated a marine supply store. Although the property was in a residential zone, the Haucks had obtained a variance permitting them to operate the supply company. It is unclear whether variances were obtained for the other lots, a point to which we will return later in our opinion. In any event, the Haucks closed the marine supply store in 1988, but continued to use the building for storage.
Subsequent to its announcement of the project, the Authority scheduled a series of meetings with property owners affected by the development plan. The Haucks attended a meeting conducted in June 1991, during which an acquisition and relocation schedule was distributed. The schedule indicated that appraisal inspections would begin in mid-June 1991 and that relocations would commence the following month. Each property owner received a pamphlet noting that the Authority had issued its final approval of the project and that the development plan involved acquisition of all properties in the project area.
On February 17, 1993, the Authority filed a complaint for the condemnation of the Haucks' six lots. Based upon pre-condemnation appraisal reports, the Authority offered the Haucks $216,000 for the six properties. The parties thereafter sought a hearing to determine the date for valuing the lots. Following an evidentiary hearing, the Law Division issued a letter opinion in which it found that "as early as June 1991, [the Haucks'] use and enjoyment of [their] property had been affected by the actions of the [Authority]." The court concluded that the Authority's conduct "constituted a direct, unequivocal, immediate and easily observable interference with [the Haucks'] use and enjoyment of [the] property that was traceable to the condemnation." Rejecting the Authority's argument that the date of filing its complaint should control, the court held that the value of the property in June 1991 should be the barometer for determining just compensation.
The case was first tried in August 1996. The Authority offered expert testimony that the value of the six lots totaled $220,000. The Haucks asserted that the properties were worth $536,000. The jury found that the fair market value of the lots in June 1991 was $230,000. The Haucks moved for a new trial, contending that the Law Division erred in its instructions by telling the jury that the variance permitting the commercial use of the property pertained solely to one of the six lots. The Law Division granted the Haucks' motion. In its memorandum decision, the court determined that a jury question was presented respecting whether variances had been obtained for all of the lots, and that it had committed error by deciding the factual issue as a matter of law.
The case was retried in June 1997. The jury returned a verdict of $281,100. The Haucks moved for the award of interest on the amount of the jury's verdict in excess of the sum the Authority had deposited. In their application, the Haucks asked the court to apply an interest rate of 12.1% per annum, and asserted that interest should run from June 1991, the date fixed for valuation of the property. The Law Division applied the rates of interest set by R. 4:42-11. In reaching this conclusion, the court reasoned that the interest rates had not fluctuated during the pendency of the condemnation proceedings and that the Haucks' unreasonable demands had "contribut[ed] to the delay" in disposing of the case. The court also concluded that interest should run from the date that the condemnation complaint was filed.
The Haucks appealed, contending that interest should be computed based upon the valuation date set by the court, and that the *952 interest rate applied by the Law Division was insufficient to compensate them for their loss. The Authority cross-appealed, asserting that the Law Division erred by granting a new trial. We granted motions to intervene filed by the Attorney General, the Township of West Windsor and Yvette Nierenberg. We now affirm the judgment with minor modifications.

II.
We first address the Haucks' argument that interest should run from the date of valuation, June 1991. Two statutory provisions are implicated by the Haucks' contention. N.J.S.A. 20:3-30 provides in pertinent part:
Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee .... [Emphasis added.]
N.J.S.A. 20:3-31 states:
Interest as set by the court upon the amount of compensation determined to be payable hereunder shall be paid by the condemnor from the date of the commencement of the action until the date of payment of the compensation; provided, however, that there shall be excluded from the amount upon which interest shall be calculated, all moneys deposited pursuant to [N.J.S.A. 20:3-15 to 3-28]; and provided, further, that interest payable hereunder shall be subject to abatement for rents and profits derived from the property by the condemnee during the period for which interest is payable thereunder, and/or for the fair rental value of such property or any portion thereof occupied by the condemnee during such period. [Emphasis added.]
The Haucks assert that where the condemnor's actions have "substantially affect[ed] the [condemnee's] use and enjoyment of the property" in a manner sufficient to trigger the valuation date set forth in N.J.S.A. 20:3-30(c), interest should run from that date.
We reject the Haucks' argument because it does not comport with the statutory language and it conflicts with the legislative intent. N.J.S.A. 20:3-31 states specifically that interest is to be paid "from the date of the commencement of the action." This section is modified by N.J.S.A. 20:3-8, which provides that a condemnation action "shall be instituted by filing of a verified complaint." The wording of the statutes is crystal clear. Interest is to run from the commencement of the action, the filing of a verified complaint seeking condemnation. If the Legislature had intended that interest could run from a date earlier than the commencement of the action, it would have said so. Because it did not, we are obliged to apply the statutory provisions as written.
So too, the legislative purpose in enacting N.J.S.A. 20:3-30 was not in any way related to the subject of interest. By directing that valuation be fixed as of the date the condemnor's actions have "`substantially affect[ed]'" the condemnee's "`use and enjoyment of the property,'" the Legislature intended to eliminate project-generated fluctuations in value from the determination of just compensation. See Township of West Windsor v. Nierenberg, 150 N.J. 111, 127, 695 A.2d 1344 (1997) (quoting Report of Eminent Domain Revision Commission of New Jersey 27-28 (1965)); New Jersey Sports & Exp. Auth. v. Giant Realty Assocs., 143 N.J.Super. 338, 347-48, 362 A.2d 1312 (Law Div.1976); cf. Jersey City Redev. Agency v. Kugler, 58 N.J. 374, 379, 277 A.2d 873 (1971). The object of N.J.S.A. 20:3-30(c) is thus "to protect the condemnee from a decrease in the value of its property which is attributable to the cloud of condemnation" caused by the acts of the condemnor. New Jersey Sports & Exp. Auth. v. Giant Realty Assocs., 143 N.J.Super. at 348, 362 A.2d 1312. "The statute is also designed to insulate the condemnor from the ravages of an inflationary spiral" resulting from the anticipation of a governmental taking. Ibid. Simply stated, the legislative goal was to freeze property value once a governmentally-inspired event occurs which causes an upward or downward fluctuation in monetary worth. See Township of West *953 Windsor v. Nierenberg, 150 N.J. at 127, 695 A.2d 1344 (quoting Report of Eminent Domain Revision Commission of New Jersey 27-28); cf. Housing Auth. of City of Newark v. Ricciardi, 176 N.J.Super. 13, 19, 422 A.2d 78 (App.Div.1980).
We note that N.J.S.A. 20:3-30 and N.J.S.A. 20:3-31 were enacted on the same date. The Legislature was obviously aware that it was providing alternative dates of valuation in condemnation matters. It nevertheless chose to provide for the running of interest solely from "the date of the commencement of the action." N.J.S.A. 20:3-31. The legislative design was thus plainly articulated in the wording of the separate sections.
The Haucks rely on Township of Wayne v. Kosoff, 73 N.J. 8, 372 A.2d 289 (1977), where our Supreme Court said that N.J.S.A. 20:3-30 and N.J.S.A. 20:3-31 "must be read in pari materia," and that "[s]ince ... compensation shall be determined at least as of the date of the commencement of the action, it follows that the allowance of interest should be made on the same basis...." Id. at 16-17, 372 A.2d 289. However, the issue before the Court in Kosoff was whether interest should run from the date of the deposit on the amount of a condemnation award in excess of the amount deposited pursuant to N.J.S.A. 20:3-23 or, alternatively, from the date of the commencement of the action pursuant to N.J.S.A. 20:3-31. Ibid. The Court held that interest must run from the date of the commencement of the action. Id. at 17, 372 A.2d 289. We do not read Kosoff as mandating that interest always run from the date of valuation.
Nor do we perceive any constitutional requirement for the payment of interest from the date the condemnor's action "substantially affects" the condemnee's use and enjoyment of the property. N.J.S.A. 20:3-30(c). Whether there exists a constitutional mandate for the payment of interest on the value of property taken in a condemnation action "`depends on whether there is a lapse of time between the date of the actual taking of the property and the tender of or payment of the value of the property so taken.'" State v. Seaway, Inc., 46 N.J. 376, 380, 217 A.2d 313 (1966) (quoting New Jersey Highway Auth. v. Ellis, 24 N.J. 1, 7, 130 A.2d 601 (1957)). The allowance of interest on an award of condemnation "is a requirement of constitutional magnitude where the actual taking of property is not contemporaneous with payment...." Township of Wayne v. Cassatly, 137 N.J.Super. 464, 471, 349 A.2d 545 (App.Div.1975), certif. denied, 70 N.J. 137, 358 A.2d 184 (1976).
It is thus instructive that the standard for fixing the valuation date as set forth in N.J.S.A. 20:3-30(c) is not nearly as rigorous as that applicable to claims of inverse condemnation. The inquiry whether specific governmental action constitutes a taking does not determine whether a landowner's use and enjoyment of his or her property has been "substantially affected by a future condemnor for the purpose of fixing the valuation date that governs the eventual condemnation proceeding." Township of West Windsor v. Nierenberg, 150 N.J. at 134, 695 A.2d 1344. In an inverse condemnation case, "the property owner is `required to show that there has been a substantial destruction of the value of [his or her] property and that the defendant's activities have been a substantial factor in bringing this about.'" Ibid. (quoting Washington Market Enters., Inc. v. City of Trenton, 68 N.J. 107, 123, 343 A.2d 408 (1975)). The legislative standard under N.J.S.A. 20:3-30(c), however, requires only a showing that the governmental action has "substantially affect[ed]" the landowner's use and enjoyment of the property in order to trigger the valuation date. Ibid. "That standard differs from the standard for determining when a government action constitutes a taking." Ibid. (citing New Jersey Sports & Exp. Auth. v. Giant Realty Assocs., 143 N.J.Super. at 349, 362 A.2d 1312).
The Haucks either blur or confuse the critical distinction between the "substantial destruction" of property rights necessary to constitute a taking, Schnack v. State, 160 N.J.Super. 343, 350-51, 389 A.2d 1006 (App. Div.), certif. denied, 78 N.J. 401, 396 A.2d 587 (1978), and the "substantial effect" necessary to trigger a valuation pursuant to N.J.S.A. 20:3-30(c). The practical effect of the Haucks' argument is to make a date of valuation *954 set pursuant to N.J.S.A. 20:3-30(c) legally indistinguishable from a de facto constitutional taking. In effect, pre-condemnation activity that reduces the value of property by as little as twenty-five percent would trigger essentially the same burden on a condemnor as would an actual physical appropriation. See Township of West Windsor v. Nierenberg, 150 N.J. at 137, 695 A.2d 1344 (reduction in value of twenty-five percent may trigger the valuation mechanism of N.J.S.A. 20:3-30(c)).
Perhaps it bears repeating that land use law teems with activity which every day touches the lives of millions. Karam v. State, 308 N.J.Super. 225, 232, 705 A.2d 1221 (App.Div.1998). Governmental authorities must be afforded sufficient latitude to plan and develop, and to consider and reject or accept various options. A requirement that interest run from the date of valuation set by N.J.S.A. 20:3-30(c) would undermine the ability of governmental entities to pursue projects that serve the public interest. Public agencies often notify the public of their planned projects years before the actual condemnations. Were interest to run from dates of valuation triggered by such notifications, the cost of acquiring property for public purposes would greatly increase. Nothing in our constitutional jurisprudence or in the statutory language compels a result so inimical to the public interest. We thus conclude that interest on a condemnation award should run from either the date of taking or the commencement of the action, whichever is earlier.

III.
We next consider the Haucks' contention that the interest rates applied by the Law Division were insufficient. As we noted earlier, the court applied the interest rates set by R. 4:42-11, which essentially track the Cash Management Fund rates. The Haucks contend that the Cash Management Fund is too liquid an investment to measure their loss for the Authority's detention of the monies owed. We reject this contention in the particular circumstances of this case.
As we noted earlier, "the allowance of interest on a condemnation award is a requirement of constitutional magnitude where the actual taking of the property is not contemporaneous with payment." Borough of Rockaway v. Donofrio, 186 N.J.Super. 344, 353, 452 A.2d 694 (App.Div.1982) (citing Township of Wayne v. Cassatly, 137 N.J.Super. at 474, 349 A.2d 545); see also State v. Seaway, Inc., 46 N.J. at 381, 217 A.2d 313; New Jersey Highway Auth. v. Ellis, 24 N.J. at 7, 130 A.2d 601. This right has been implemented by statute, N.J.S.A. 20:3-32, which requires the judge in a summary proceeding to fix the amount of interest. The judge should consider the prevailing commercial interest rates, the prime rate or rates, and the applicable legal rates of interest. Township of Wayne v. Cassatly, 137 N.J.Super. at 474, 349 A.2d 545. "[T]he judge should then select that rate or rates of interest which will best indemnify the condemnee for the loss of use of the compensation to which he has been entitled from the date on which the action for condemnation was instituted, less interest on all amounts previously deposited...." Ibid.; see also State v. Fairweather, 298 N.J.Super. 421, 428-29, 689 A.2d 817 (App.Div.1997).
We are satisfied that the Law Division properly fulfilled its statutory function. In reaching this conclusion, we recognize that the statutory requirement mandating interest be fixed "`in a summary manner'" does not reasonably imply "a proceeding devoid of evidential input." Township of Wayne v. Cassatly, 137 N.J.Super. at 474, 349 A.2d 545. However, the record indicates that the Haucks filed documentary submissions in support of their claim and that these analyses were fairly considered by the Law Division.
In allowing interest commensurate with the rates set by R. 4:42-11, the Law Division cited the fact that unlike Cassatly, where interest rates substantially increased during the pendency of the condemnation action, id. at 474, 349 A.2d 545, interest rates had remained stable during the pendency of these proceedings. The court also stressed that the Haucks' unreasonable demands, twice the amount of the ultimate verdict, substantially contributed to the length of the proceedings. *955 See State v. Nordstrom, 54 N.J. 50, 57, 253 A.2d 163 (1969) (the State's highest offer of settlement was less than one-fifth the jury verdict).
We cannot fairly say that the Law Division's decision was clearly a mistaken one and was so plainly unwarranted that the interests of justice demand intervention and correction. Nor does the record suggest that the judge went so wide of the mark that a mistake must have been made. We discern no error in the award of interest. See Jersey City Redev. Agency v. Clean-O-Mat Corp., 289 N.J.Super. 381, 400-01, 673 A.2d 1360 (App.Div.), certif. denied, 147 N.J. 262, 686 A.2d 763 (1996).

IV.
We turn to the issues raised by the cross-appeal. It will be recalled that the Haucks' property was located in a residential zone and that a use variance had been obtained permitting the operation of a marine supply store on at least one of the six contiguous lots. Mr. Hauck testified that the remaining lots were also used for commercial purposes accessory to the operation of the store. Mr. Hauck also recounted that he sold and serviced kerosene heaters and used the other lots for this purpose. The Haucks offered expert testimony that a commercial enterprise was the acquired property's highest and best use. The trial court thus invited the Haucks to present additional evidence clarifying whether the variance they had obtained covered all or only one of the lots. When the Haucks declined this invitation, the trial court instructed the jury that the variance covered only one of the six lots, and that it could consider the possibility of a future zoning change to the same extent that a buyer and seller might do so in their negotiations over the fair market value of the property. See State v. Caoili, 135 N.J. 252, 264-65, 639 A.2d 275 (1994); State v. Gorga, 26 N.J. 113, 116-17, 138 A.2d 833 (1958).
Although the Haucks neither interposed an objection to the trial court's instructions nor submitted a request to charge, they moved for a new trial following the jury's verdict and presented municipal resolutions which supported the thesis that use variances had been obtained covering all of the lots. In granting the Haucks' motion, the trial court concluded that it had erred in finding as a matter of law that the use variance covered only one of the six lots.
We find no sound basis to reverse the order granting a new trial. The Haucks were undoubtedly derelict in their failure to present public records supporting their position that variances had been obtained for all of the lots in question. Nevertheless, the evidence presented at the first trial was sufficient to raise a jury question concerning the zoning status of the properties. The trial court erred by deciding that issue as a matter of law. We thus see no reason for disturbing the court's subsequent corrective action in granting a new trial.

V.
The Authority deposited $216,000 with the Superior Court on April 5, 1993. However, the trial court granted the Authority a credit for the $216,000 deposit as of the date it determined interest was to run. The Authority is entitled to a credit only as of the date the deposit was made. The Authority confesses error on this point.
Accordingly, we remand the matter to the Law Division for modification of the judgment. So modified, the judgment is affirmed.