785 A.2d 929

TOWNSHIP OF WEST WINDSOR, IN THE COUNTY OF MERCER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. YVETTE NIERENBERG AND PRINCETON MANOR ASSOCIATES, DEFENDANTS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 15, 2001—Decided December 13, 2001.

Before Judges BAIME, FALL and AXELRAD.

*Richard L. Rudin* argued the cause for appellant (*Weiner Lesniak,* attorneys; *Mr. Rudin,* of counsel and on the brief).

*Edward D. McKirdy* argued the cause for respondent Nierenberg (*McKirdy & Riskin,* attorneys; *Mr. McKirdy,* of counsel and on the brief).

The opinion of the court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

The issue in this case involves the rates of interest to be applied from the date of filing of the condemnation complaint less credit for the monies deposited. Plaintiff, Township of West Windsor ("Township"), appeals the Law Division's award of pre-and post-judgment interest to defendant condemnee, Yvette Nierenberg ("Nierenberg"),[1] calculated on the prime rate compounded annually, claiming that the proper rates of interest should have been under the lower simple interest rates set forth in *Rule* 4:42–11.

Nierenberg owned a parcel in West Windsor which encompassed approximately fifty acres. In 1992, she conveyed a thirteen-acre portion to the Township. The remaining approximately thirty-eight acres had 1,250 feet of frontage and were available for residential development. On May 3, 1993, the Township filed a complaint for condemnation of this parcel and deposited its estimate of just compensation of $1,210,000 into court.[2]

---

[1] Princeton Manor Associates, a partnership formed to develop the property, was dismissed as a defendant on November 14, 2000.

[2] The Township subsequently deposited $1,155,000 on July 31, 1998 and $343,688 on November 4, 1998. The last deposit consisted of accrued interest which was calculated on the basis of the Superior Court Trust fund rates furnished by the court.

Thereafter, the parties engaged in numerous legal battles. Suffice it to say that the contest over the appropriate valuation date of the property pursuant to *N.J.S.A.* 20:3–30(c) was pursued all the way to our Supreme Court. *Township of West Windsor v. Nierenberg*, 150 *N.J.* 111, 695 *A.2d* 1344 (1997) (holding, in a four-three split, that the date of the Township's letter to the development partnership in June 1988, expressing interest in acquiring the land to build a park, was the date of valuation pursuant to *N.J.S.A.* 20:3–30(c)). During the pendency of the litigation, we permitted both parties to intervene in *Casino Reinvestment Development Authority v. Hauck*, 317 *N.J.Super.* 584, 722 *A.2d* 949 (App.Div.1999), *aff'd*, 162 *N.J.* 576, 745 *A.2d* 1163 (2000). Although the Haucks presented arguments on appeal both as to the rates of interest to be applied and to the duration of interest, the intervenors limited their arguments to the narrow issue as to when interest commences. *Ibid.* We affirmed the trial judge's decision that interest runs from the date of commencement of the action, unless there is a taking on an earlier date, and held that it was not error to award interest at the simple rates set by *Rule* 4:42–11, which track the Cash Management Fund rates, under "the particular circumstances of the case." *Hauck, supra,* 317 *N.J.Super.* at 594, 722 *A.2d* 949.

On appeal to the Supreme Court, the Haucks again argued both the interest rate and accrual issues. The intervenors elected only to argue the accrual issue. Nevertheless, in affirming our decision, the Supreme Court stated:

> We simultaneously granted certification to Intervenor–Appellant Yvette Nierenberg who claimed that our decision could affect the outcome in a pending condemnation action involving her property in West Windsor. *Township of West Windsor v. Nierenberg*, 150 *N.J.* 111, 695 *A.2d* 1344 (1997). Like the Haucks, she is bound by our disposition here.
>
> [*Hauck, supra,* 162 *N.J.* at 578, n. 1, 745 *A.2d* 1163].

The condemnation commissioners subsequently awarded $2,625,000 as the fair market value of the Nierenberg property. Both parties appealed and then settled at that amount, leaving as the sole issue for the trial court the rate of interest from May 3, 1993, less credits for the monies paid into court.

The parties filed certifications and briefs as to their respective positions on the appropriate rates of interest. The Township argued that the rates set forth in *Rule* 4:42–11 should govern, and that, in any event, those rates should be applied under the doctrines of *res judicata* and collateral estoppel because of the Supreme Court's decision in the *Hauck* case. Nierenberg submitted a certification from Thomas R. Angers, Director of Research of Glenmede Trust Company, in support of the prime rates of interest or the national mortgage survey rates for ten-year commercial mortgages.

The court conducted an evidentiary hearing to resolve the interest rate question. Plaintiff presented the expert testimony of Patrick Gaughan, an economics and finance professor at Fairleigh Dickinson University, and president of Econometrix Research Associates, a firm specializing in consulting and testifying as to damages in personal injury and commercial litigation. He concluded that *Rule* 4:42–11 rates for tort cases should apply in condemnation awards except in times of extraordinary volatile interest rates. He concluded that when market rates are stable, pre-judgment interest should be based on *Rule* 4:42–11 simple interest rates. In times of volatile rates, commercial rates were appropriate on a case by case basis. Based on his analysis of the interrelation between inflation and interest rates over a thirty-year period, he concluded that from the period of 1993 to the present the market interest rates were "relatively stable" and that there was an absence of a "significantly changing phenomenon" that existed at the time of *Township of Wayne v. Cassatly*, 137 *N.J.Super.* 464, 349 *A.*2d 545 (App.Div.1975), *certif. denied*, 70 *N.J.* 137, 358 *A.*2d 184 (1976). Therefore, he opined that *Rule* 4:42–11 rates were appropriate, resulting in the amount of interest due of $363,875.[3] He further concluded that "risk" should not be

---

[3] The annual rate of interest under *Rule* 4:42–11, based on the State of New Jersey Cash Management Fund was as follows: 1993, 5.5%; 1994–1995, 3.5%; 1996–1999, 5.5%; and 2000, 5%.

added despite the fact that risk is involved in most commercial investments.

Nierenberg presented Angers as an expert at trial. His company manages high net worth portfolios. He used interest rates related to real estate, taking into consideration the element of "risk." He predicated interest on the prime rates, a rate paid by favored borrowers on loans,[4] and the national mortgage survey rates, the commercial rate for ten-year mortgages.[5] According to Angers, these rates represented the minimum interest rate that an individual, such as Nierenberg, would incur if she borrowed money in the market place on the basis of her real estate, and would best indemnify her for the loss of use of compensation to which she was entitled as a result of the condemnation. He described New Jersey's Cash Management Fund, *Rule* 4:42–11, as a low risk investment, slightly riskier than a treasury bill. Based on the prime rates established by Bank of America, compounded annually but adjusted monthly, he testified that the appropriate amount of interest due was $736,662.

Pursuant to the court's permission, the Township supplemented the record with a certification from its Chief Financial Officer setting forth the borrowing costs for the municipality for the period of 1993 to the present. The Township had five bond sales: October 15, 1992; January 15, 1995; January 15, 1996; September 15, 1998; and October 15, 1998. These sales totaled approximately $38 million, with maturity dates of ten to twenty years, at net interest costs ranging from 5.7634% in 1992 to 3.9662% in 1998.

In a written opinion dated October 17, 2000, Judge Feinberg accepted the opinion of Nierenberg's expert and concluded the following:

---

[4] The prime rates were 6% in May 1993, increasing to 9.5% in September 2000.

[5] The ten-year national mortgage survey rate that existed in 1993 was a fixed rate of 7.875%.

> This court finds, consistent with the opinion of Mr. Angers, that the prime rate represents the interest rate that will best indemnify Mrs. Nierenberg for the loss of use of the compensation. The court is satisfied that the opinion offered by Mr. Angers is reasonable, fair and appropriate based on a comparison of the prevailing commercial rates during the time period in question. Application of the prime rate, this court believes, actually represents a conservative estimate.

The judge modified Angers' position to the extent that she compounded the interest annually rather than monthly or quarterly.

On November 14, 2000, the judge entered a final judgment for $746,174, based on the prime rate compounded annually through October 31, 2000, with post-judgment interest accruing annually at the prime rate until date of payment.

On appeal, the Township raises the following contentions:

POINT I.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY AWARDING INTEREST AT THE PRIME RATES; THE COURT SHOULD HAVE AWARDED DEFENDANT INTEREST AT THE RATES SET FORTH IN *R.* 4:42–11, LESS CREDITS FOR THE THREE DEPOSITS WHICH PLAINTIFF HAD MADE INTO THE SUPERIOR COURT, BECAUSE OF LOW INFLATION LEVELS AND RELATIVELY STABLE INTEREST RATES.

   A. THE TRIAL COURT MISINTERPRETED THE APPLICABLE LAW BY DECIDING TO CONDUCT AN EVIDENTIARY HEARING AND THEN BY REJECTING THE TESTIMONY OF PLAINTIFF'S EXPERT.

POINT II.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT TAKING INTO CONSIDERATION THAT THE PRIME RATES OF INTEREST ARE BASED UPON MUCH RISKIER LOANS TO INDIVIDUAL BORROWERS THAN RATES THAT WOULD BE APPLICABLE TO A POLITICAL SUBDIVISION OF THE STATE.

POINT III.

THE TRIAL COURT SHOULD HAVE AWARDED SIMPLE, RATHER THAN COMPOUND INTEREST.

POINT IV.

THE COURT COMMITTED REVERSIBLE ERROR BY ENTERING A JUDGMENT THAT CONTINUES THE PAYMENT OF INTEREST AT THE COMPOUNDED PRIME RATES PENDING THIS APPEAL, INSTEAD OF AWARDING POST JUDGMENT INTEREST AT THE RATES PROVIDED BY *R.* 4:42–11(a).

POINT V.

DEFENDANT IS BOUND BY THE DETERMINATION OF THE COURT IN THE CRDA CASE [*HAUCK*] THAT INTEREST RATES WERE NOT A

CHANGING PHENOMENON DURING THE PENDENCY OF THE CONDEMNATION PROCEEDINGS.

■ Both parties' involvement in the *Hauck* case as intervenors was as to the accrual date for interest and not as to the rate of interest, so the principles of collateral estoppel or *res judicata* do not apply.

"[T]he allowance of interest on a condemnation award is a requirement of constitutional magnitude where the actual taking of the property is not contemporaneous with payment." *Hauck, supra,* 317 *N.J.Super.* at 594, 722 *A.*2d 949 (citing *Cassatly, supra,* 137 *N.J.Super.* at 474, 349 *A.*2d 545). This right has been implemented by statute, the Eminent Domain Act, *N.J.S.A.* 20:3-32, which provides that "the amount of such interest shall be fixed and determined by the court in a summary manner after final determination of compensation...." The judge should consider the prevailing commercial interest rates, the prime rates of interest, and the legal rates of interest, and select the rate "which will best indemnify the condemnee for the loss of use of the compensation to which he has been entitled from the date on which the action for condemnation was instituted, less interest on all amounts previously deposited...." *Cassatly, supra,* 137 *N.J.Super.* at 474, 349 *A.*2d 545; *see also Hauck,* 317 *N.J.Super.* at 594, 722 *A.*2d 949; *State v. Fairweather,* 298 *N.J.Super.* 421, 428-29, 689 *A.*2d 817 (App.Div.1997).

We are satisfied that the Law Division judge properly fulfilled her statutory function. An evidentiary hearing was appropriate. *Cassatly, supra,* 137 *N.J.Super.* at 474, 349 *A.*2d 545; *see also Hauck, supra,* 317 *N.J.Super.* at 595, 722 *A.*2d 949.

■ Given our limited scope of appellate review and deference to the fact-finding role of the trial court, we cannot substitute our review of the record for that of the Law Division. *Meshinsky v. Nichols Yacht Sales, Inc.* 110 *N.J.* 464, 476, 541 *A.*2d 1063 (1988); *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483-84, 323 *A.*2d 495 (1974). There was sufficient basis in the record to support the trial court's findings and conclusions. *Rova Farms,*

*supra,* 65 *N.J.* at 484, 323 *A.*2d 495; *see also New Jersey Tpk. Auth. v. Sisselman,* 106 *N.J.Super.* 358, 370, 255 *A.*2d 810 (App. Div.), *certif. denied,* 54 *N.J.* 565, 258 *A.*2d 16 (1969); *Fagliarone v. Township of No. Bergen,* 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div.), *certif. denied,* 40 *N.J.* 221, 191 *A.*2d 61 (1963); *Weiss v. I. Zapinsky,* 65 *N.J.Super.* 351, 357, 167 *A.*2d 802 (App.Div.1961). Although we might have reached a different result in this case, we find no abuse of discretion. We cannot fairly say that the judge's decision under the particular circumstances of this case was clearly a mistaken one requiring our intervention and correction. *Hauck, supra,* 317 *N.J.Super.* at 595, 722 *A.*2d 949; *Jersey City Redevelopment Agency v. Clean–O–Mat Corp.,* 289 *N.J.Super.* 381, 401, 673 *A.*2d 1360 (App.Div.); *certif. denied,* 147 *N.J.* 262, 686 *A.*2d 763 (1996). Accordingly, we affirm substantially for the reasons set forth in Judge Feinberg's written opinion of October 17, 2000. *R.* 2:11–3(e)(1)(A)(E); *and see, e.g., Rova Farms, supra,* 65 *N.J.* at 483–84, 323 *A.*2d 495.

We have no occasion to decide whether, as the Township contends, the tort interest rule should be applied absent some threshold showing that application of the rule would violate the property owner's constitutional rights or would otherwise be un-fair. Even if we were to adopt such a rule, the Township would fare no better. We would regard the testimony of defendant's expert as having satisfied such a threshold test, however the standard would be phrased. We discern no sound basis to issue what in essence would be an advisory opinion on the subject.

We nevertheless add that we would be remiss were we to see only the case before us. The Township's contention that there should be some uniform rule to guide judges in determining the appropriate rate of interest in condemnation cases has much to commend it. Deciding the issue on a case-by-case basis without regard to some unifying framework of analysis poses substantial dangers to the rights of property owners, public entities and the judicial process itself. It is axiomatic that similarly situated property owners should be treated in a similar manner. The

rights of property owners and the corresponding obligations of public entities should not depend on the acumen of the expert witness presented. As it is, condemnation cases often involve the proverbial battle of experts. We do not think that the war should be extended to the battleground of how interest is to be calculated. *N.J.S.A.* 20:3–32 provides that "interest shall be fixed and determined by the court in a summary manner." While the statute does not imply a proceeding devoid of evidential input, *Cassatly, supra,* 137 *N.J.Super.* at 474, 349 *A.*2d 545, the Legislature clearly did not envision protracted, costly proceedings.

The Legislature has not provided a uniform rule or any other guidance concerning the issue. A rule of procedure could be promulgated, thus alleviating the problems we perceive. A study of the problem by the Civil Practice Committee or by a task force of experienced practitioners may perhaps be the wisest course. In light of our disposition of the issue in this case, we need not address the problem further.

Affirmed.