TOWNSHIP OF WAYNE IN THE COUNTY OF PASSAIC, A
MUNICIPAL CORPORATION OF THE STATE OF NEW
JERSEY, PLAINTIFF-APPELLANT, v. MARVIN KOSOFF
AND LEON A. CONSALES, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 16, 1975—Decided July 15, 1975.

Before Judges MICHELS, MORGAN and MILMED.

*Mr. Michael K. Diamond* argued the cause for appellant.

*Mr. Michael A. Cerreto* argued the cause for respondents (*Messrs. Cerreto & La Penna,* attorneys).

PER CURIAM. Plaintiff instituted condemnation proceedings on June 7, 1970 in order to acquire a 3.3-acre portion of a larger tract of vacant land owned by defendants and located within the Township of Wayne in an area designated as an urban renewal plan by the township and the Department of Housing and Urban Development. On April 15, 1971 the condemnation commissioners filed their report awarding defendants $372,250 for the taking, which amount included damages to the remaining tract, a parcel slightly in excess of four acres. Plaintiff and defendant both appealed this award to the Superior Court, Law Division. Several months after the matter was first listed for trial, the Eminent Domain Act of 1971, *N. J. S. A.* 20:3-1 *et seq.,* became effective. The new act afforded the property owner, subjected to a partial taking, the right to compel condemnation of the remaining property where the remainder has "little or no economic value." *N. J. S. A.* 20:3-37. In the

exercise of this new right defendants, in April 1972, obtained an order requiring plaintiff to acquire the remaining four-acre parcel. The Department of Housing and Urban Development, however, expressed reluctance to finance this additional purchase since the four-acre parcel fell outside the boundaries of the urban renewal plan. As a result plaintiff attempted, through a series of applications, to delay trial of the condemnation suit until some decision was made by the Department of Housing and Urban Development as to payment therefor. An unsuccessful attempt at relief in the federal courts was made.

At any rate, shortly before the case was finally tried plaintiff filed a motion for an order appointing an independent appraiser inasmuch as there was nearly a half million dollars difference between the amount offered by plaintiff and the amount sought by defendants. Plaintiff's motion was denied on the ground that it had been interposed primarily for purposes of further delay. Moreover, the trial judge expressed concern as to the proper procedure in presenting the testimony of an independent or court-appointed appraiser to a jury. It is the denial of this motion that provides one of the principal grounds of this appeal.

At the time the motion was made, and for a substantial period of time prior thereto, the parties were aware of a wide disparity between the appraisals made by the parties' respective expert witnesses. Plaintiff's appraiser placed a value of $490,000 on the subject property. Defendants' appraiser valued it at $937,250, the precise value accepted by the jury in its verdict. Plaintiff contends that in these circumstances, demonstrating such a wide divergence in opinion as to value of the subject property, the trial judge mistakenly exercised its discretion in refusing to appoint an independent appraiser despite the many delays in bringing the matter to trial. We agree.

There can no longer be any doubt but that a trial judge possesses the inherent power to appoint an independent

expert in a condemnation case as an aid in its "quest for the elusive truth of the matter." *State v. Lanza,* 74 *N. J. Super.* 362, 374 (App. Div. 1962), aff'd 39 *N. J.* 595 (1963), app. dism. 375 *U. S.* 451, 84 *S. Ct.* 525, 11 *L. Ed.* 2d 477 (1964); *Jersey City Redev. v. Weisenfeld,* 124 *N. J. Super.* 291, 294–295 (App. Div. 1973), certif. den. 63 *N. J.* 563 (1973).

In both the *Lanza* and the *Weisenfeld* cases the trial judge, sitting as the trier of the facts, was confronted with widely disparate valuations placed on the property sought to be condemned. In *Lanza* the trial judge's initiative in seeking aid in resolving the dilemma by resort to an independent expert was approved. In *Weisenfeld,* the trial judge sought no such aid, and his failure to do so provided one of the bases for the reversal of its judgment.

 Widely disparate opinions of value are highly suggestive of exaggerated partisanship of the experts retained by the parties and place the trier of the fact, be it judge or jury, in the position of attempting to ascertain just compensation from evidence of suspect reliability. The sole purpose of a condemnation proceeding is to ascertain just compensation for the public acquisition of private property. Wide variations in appraisal of value frustrate the achievement of that purpose, and where it occurs, as it did in the present case, the trial judge should exercise his discretion toward providing the fact finder with data from which the element of partisanship has been removed.

The appointment of disinterested *expert witnesses* by the Court is one of the expedients employed for reforming the defects of the partisan system of providing * * * testimony. [9 *Wigmore* (3 ed. 1940), § 2484 at 270; see also § 563 at 644 *et seq.*]

See also, *McCormick,* "Some Observation Upon the Opinion Rule and Expert Testimony," 23 *Texas L. Rev.* 109, 131 (1945). Such additional data can only be of aid in insuring that the constitutional goal of just compensation is achieved, and should be freely resorted to whenever the results of un-

due partisanship become evident. Such aid is as available to a jury as it is to a judge who sits as a trier of the fact; indeed, a jury, less accustomed than a judge to making difficult determinations of value, would be more in need of such additional assistance. *Scott v. Spanjer Bros., Inc.,* 298 *F.* 2d 928 (2 Cir. 1962).

An appropriate response to the questioned propriety of obtaining disinterested expert testimony in a jury trial was voiced by the court in *Scott v. Spanjer Bros., Inc., supra*:

> We believe that the appointment of an impartial medical expert by the court in the exercise of its sound discretion is an equitable and forward looking technique for promoting the fair trial of a lawsuit. It is now well accepted that the trial judge is not a mere umpire at the trial; indeed, *there may be circumstances in which he would have a duty to seek impartial assistance in order to enlighten the jury and himself on issues which have become confused because of partisanship in presentation.* In the instant case the judge was confronted with a young infant plaintiff who might have suffered injuries of a serious nature which were difficult to diagnose and explain. We believe that he exercised sound judgment. [at 930–931; emphasis supplied]

New Jersey has incorporated into its rules of court the foregoing point of view as it pertains to personal injury or wrongful death actions when the nature, extent or cause of injuries or cause of death is in dispute. *R.* 4:20. Case law has recognized its particular applicability to questions of valuation in condemnation actions. *State v. Lanza, supra.*

 That a jury may give decisive weight to the court's expert witness is an insufficient reason to abstain from obtaining needed enlightenment. 2 *Wigmore, op. cit.,* § 563 at 648 (3d Ed. 1940). That a jury may recognize unseemly partisanship as the basis for grossly disparate opinions of value and choose to credit that expert who can have no such bias provides, perhaps, the best reason for summoning such disinterested assistance. The jury should, however, be instructed that the mere fact that the witness has been called by the judge does not, of itself, entitle the testimony of that witness to greater weight.

■ ■ We therefore conclude that the trial judge mistakenly exercised his discretion in denying plaintiff's motion for the appointment of a disinterested and impartial expert witness despite the relatively brief delay such a procedure would have entailed. Unnecessary trial delays should, of course, be avoided. Prompt disposition of controversies is a desirable goal. Such considerations should not, however, result in detracting from or minimizing the overriding importance of the ultimate goal of all litigation which is to achieve substantial justice for the parties. *R.* 1:1–2. *N. J. Highway Authority v. Renner,* 18 *N. J.* 485, 495 (1955); *X. L. Liquor v. Taylor,* 17 *N. J.* 444, 454 (1955).

The judgment is reversed and the matter remanded for a retrial. Prior thereto, the trial judge shall, on notice to the parties, determine the manner in which the impartial expert shall be selected. If the parties can agree on a mutually acceptable expert, the judge should give substantial weight to that agreement. In the event of an inability to agree, the judge should feel free to select such available expert who he deems to be the most qualified. After selection, the expert should be supplied with the reports of the experts retained by the parties, together with comparables and other data relied on by each, and should be permitted to view the subject premises. His report reflecting his conclusions and the reasons therefor is to be submitted to the parties and the court. Either party should be permitted to call him as a witness. The other party not calling him should be permitted to cross-examine. If neither party wishes to call him, the judge may exercise his option to produce him for testimony. If he does testify at the judge's request, both parties may subject his testimony to cross-examination. No matter who calls him, the jury should be informed that he was appointed by the court (*R.* 4:20), and the cost of his retainer should be shared by the parties on an equal basis whatever the result.

Because of the basis for the opinion herein, the remaining grounds for appeal need not be decided.

Reversed and remanded for proceedings consistent with this opinion.