**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0812-23

STATE OF NEW JERSEY, by
the COMMISSIONER OF
TRANSPORTATION,

     Plaintiff-Respondent,

v.

KRISMIC ASSOCIATES, INC., A
NEW JERSEY CORPORATION,
MAGYAR BANK, A NEW
JERSEY STATE SAVINGS BANK,
STATE OF NEW JERSEY,
AVOLIO'S RENTALS AND
SALES, INC., A NEW JERSEY
CORPORATION, D/B/A UNITED
RENT-ALL OF BRIDGEWATER,
AND TOWNSHIP OF
HILLSBOROUGH, IN THE
COUNTY OF SOMERSET, A
MUNICIPAL CORPORATION
OF NEW JERSEY,

     Defendants-Appellants.

_____

Argued October 8, 2025 – Decided November 7, 2025

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0400-19.

Peter H. Wegener argued the cause for appellants Krismic Associates, Inc. and Avolio's Rentals and Sales, Inc. (Bathgate, Wegener & Wolf, PC, attorneys; Peter H. Wegener, of counsel and on the briefs).

Rebecca J. Karol, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Rebecca J. Karol, on the brief).

PER CURIAM

This appeal arises from a condemnation action in which plaintiff New Jersey Department of Transportation exercised eminent domain to acquire a portion of the property owned by defendant Krismic Associates, Inc.  Defendant appeals a Law Division order for final judgment fixing just compensation at $447,000.  Defendant contends the trial court applied an inappropriate method to calculate damages.  Defendant also challenges the trial court's award of simple interest using the rate prescribed in Rule 4:42-11(a)(iii).  After considering the record in view of the governing legal principles, we affirm.

I.

We presume the parties are familiar with the procedural history, pertinent facts, and expert opinions elicited during the bench trial.  We therefore need

2

only briefly summarize the relevant circumstances leading to the trial court's findings of fact and conclusions of law.

On March 28, 2019, plaintiff filed a complaint seeking to condemn a portion of defendant's property in Hillsborough Township for the purpose of relocating the Lake Road intersection on the west side of Route 206. The entire property consisted of 3.375 acres, with 624 feet of access onto Route 206. The property contained one commercial building.

Plaintiff sought to condemn a "flag-type" piece of the property comprising 0.59 acres, reducing defendant's Route 206 access to 390 feet. Plaintiff also sought permanent utility and slope easements and temporary site mitigation and erosion control easements.

The bench trial was convened over six non-consecutive days in late 2021. Plaintiff presented expert testimony from real estate appraiser Jerome McHale. Defendant presented expert testimony from real estate appraiser Jon Brody.

McHale opined that just compensation was $251,000. Brody assigned a higher value. He estimated the property was worth $2,700,000 before taking and $1,907,000 after taking. Brody opined that just compensation would be $772,000, consisting of $396,000 for the taking and easements and $376,000 as damages to the remainder.

A-0812-23

On December 5, 2022, the trial court entered just compensation in the amount of $447,000: $366,000 for the taking, $30,000 for the easements, and $51,000 for damages to the remainder. In reaching those figures, the court relied on Brody's $14.25 per-square-foot valuation. The court also adopted Brody's opinion concerning the valuation of the taking and the easements.

At the core of this appeal, defendant challenges the trial court's use of the income approach to calculate the damages to the remainder. In determining the premium a buyer would have paid for a second egress, the court found there would be a seventy percent probability that the second egress permit would be granted.

With respect to interest, the trial court considered defendant's mortgage rates, Rule 4:42-11 rates, Prime Rates, and American Council of Life Insurance (ACLI) rates. Ultimately, the court elected to award simple interest based on the Rule 4:42-11 rate.

Defendant moved for reconsideration. The court denied defendant's motion, issuing a twelve-page written opinion. The court amplified its earlier oral decision, finding "minimal damages to the remainder" and determining that Brody's valuation was "wholly excessive." The court reasoned that "[i]t is unlikely that a willing buyer would have increased an offer for the premises

A-0812-23

because of the probability of obtaining a second egress in the amount of $656,000." The court further explained,

> I found that . . . a willing buyer would pay a premium of $30,000 for the [seventy percent] probability of obtaining a second egress permit [for] the property. There was also damage to the remaining property as a result of the reduction in the frontage along Route 206, the loss of [thirty-seven percent] of frontage along Route 206 and because the taking increased the non-conformity of the remainer of the premises. I found that these damages amounted to $21,000.

With respect to interest, the court determined that defendant's mortgage rates have been "fairly stable or going down from 2019 to July of 2022. Then beginning in July of 2022 rates be[gan] creeping up." Given this stability, the court concluded there was "no reason to make [plaintiff] pay the higher interest rate beyond that provided for in R. 4:42-11(a)(iii)."

Defendant raises the following issues on appeal:

POINT ONE

WHETHER THE TRIAL COURT'S COMPUTATION OF DAMAGES WAS BASED ON PLAINLY INCORRECT REASONING.

POINT TWO

WHETHER THE TRIAL COURT RELIED UPON THE APPROPRIATE CONSIDERATION OF PREVAILING COMMERCIAL MORTGAGE AND PRIME RATES, INCLUDING THE ACTUAL RATE

5

THE OWNER WAS PAYING IN DETERMINING THE APPROPRIATE RATE OF INTEREST TO PROVIDE "JUST COMPENSATION."

INTEREST IS PART OF JUST COMPENSATION AND MARKET RATES OF INTEREST ARE A MAJOR FACTOR IN CALCULATING THE AMOUNT OF JUST COMPENSATION.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. With respect to the scope of our review, a trial court's factual findings "are considered binding on appeal when supported by adequate, substantial[,] and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974). In contrast, the trial court's legal findings are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); see also Borough of Harvey Cedars v. Karan, 214 N.J. 384, 401 (2013) ("The question before us solely concerns an issue of law—how to compute 'just compensation' in a partial-takings case. Because our standard of review is de novo, we owe no deference to the legal conclusions reached by the trial court and Appellate Division.").

In reviewing a judge's determination of the appropriate interest rate to apply to a just compensation award, we "apply a 'deferential approach . . . reviewing it against an abuse of discretion standard.'" N.J. Transit Corp. v.

Franco, 447 N.J. Super. 361, 369 (App. Div. 2016) (quoting Townsend v. Pierre, 221 N.J. 36, 53 (2015)); see also Twp. of W. Windsor v. Nierenberg, 345 N.J. Super. 472, 479 (App. Div. 2001); Casino Reinvestment Dev. Auth. v. Hauck, 317 N.J. Super. 584, 595 (App. Div. 1999).

Turning to substantive legal principles, the State's eminent domain power is subject to the Fifth Amendment Takings Clause, which provides, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. "Wide latitude is vested in the Legislature for regulation 'of the manner and method of exercising the power of eminent domain,' subject only to express constitutional limitations." Jersey City Redevelopment Agency v. Kugler, 111 N.J. Super. 50, 59 (App. Div. 1970), aff'd, 58 N.J. 374 (1971) (quoting Port of N.Y. Authority v. Heming, 34 N.J. 144, 154 (1961)).

The Constitution imposes three significant limitations on the State's eminent domain power:

> First, the State must pay "just compensation" for property taken by eminent domain. N.J. Const. Art. I, ¶ 20. Second, no person may be deprived of property without due process of law. Twp. of W. Orange v. 769 Assocs., 172 N.J. 564, 572 (2002). Third . . . the State may take private property only for a "public use." N.J. Const. Art. I, ¶ 20; see Twp. of W. Orange, 172 N.J. at 572.

7

> [Gallenthin Realty Dev., Inc. v. Borough of Paulsboro,
> 191 N.J. 344, 356-57 (2007).]

"Just compensation is 'the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act.'" Caoili, 135 N.J. at 260 (quoting State v. Silver, 92 N.J. 507, 513 (1983)). "It is the 'value that would be assigned to the acquired property by knowledgeable parties freely negotiating for its sale under normal market conditions based on all surrounding circumstances at the time of the taking.'" Ibid. (quoting Silver, 92 N.J. at 513).

"[T]he property's highest and best use" is the most relevant factor for determining fair market value. Ibid. (quoting State v. Hope Road Assocs., 266 N.J. Super. 633, 641 (App. Div. 1993)). "The reasonableness of a use of condemned property, including its highest and best use, must be considered in light of any zoning restrictions that apply to the property." Ibid.

Importantly for purposes of this appeal,

> [t]here is no precise and inflexible rule for the assessment of just compensation. The Constitution does not contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula. The effort has been to find working rules and practical standards that will accomplish substantial justice such as, but not limited to, market value. United States v. Cors, [337 U.S. 325, 332 (1949)].

8

[Kugler, 58 N.J. at 384.]

Moreover, "the trial judge as the factfinder is not bound by the opinion valuation of the experts on either side. Just as a jury, a judge may adopt 'so much of it as appears sound, reject all of it, or adopt all of it.'" Middlesex Cnty. v. Clearwater Vill., Inc., 163 N.J. Super. 166, 174 (App. Div. 1978) (quoting State Highway Com. v. Dover, 109 N.J.L. 303, 307 (E. & A. 1932)).

## III.

We next apply these foundational principles to the present facts, starting with defendant's argument that the trial court's calculation of $51,000 damages to the remainder[1] was based on "plainly incorrect reasoning" due to a "faulty mathematical equation." Defendant contends the court erroneously determined that the damages to the remainder was "the value of the second egress before the taking," rather than the value of "the loss of the [P]roperty's only northbound exit" after the taking. Defendant argues the trial court erred in its calculation in two respects. First, defendant asserts the court erroneously used a before-taking value that only accounted for land (i.e., the square footage valuation multiplied

---

[1] It bears noting that defendant on appeal does not challenge the court's $366,000 award for the taking or the court's $30,000 award for the various easements. As to those awards, the trial court agreed with and adopted the valuations recommended by defendant's expert, Brody.

by the Property's square footage), rather than a before-taking value that accounted for both land and improvements (i.e., the net income divided by the capitalization rate).  Second, defendant argues the court improperly relied on the premium a buyer would pay for the second egress, rather than taking a discount off of the value of the Property as if the permit were in place.  Defendant thus argues that the damages to the remainder award should have been $260,000.

We underscore that the trial court adopted Brody's $14.25 per-square-foot valuation to determine the before-taking property value.  The court also used Brody's before-taking capitalization rate of 7% to determine the after-taking property value.  Further, the court agreed with Brody that "there was a reasonable probability of the owner qualifying for the second egress access to Route 206 at the traffic light," stating, "I find further, this does . . . result in damages to the [P]roperty after the taking."  In sum, the trial court's valuations regarding the damages to the remainder were rooted in values proposed by the experts and, of note, the court largely relied on defendant's expert's valuations.

Defendant cites two cases to support its contentions with respect to both claimed errors: State by State Highway Commissioner v. Gorga, 26 N.J. 113 (1958), and State by Commissioner of Transportation v. Caoili, 135 N.J. 252 (1994).  Defendant's reliance on these cases is misplaced.

10

In Gorga, our Supreme Court held that "if as of the date of taking there is a reasonable probability of a change in the zoning ordinance in the near future, the influence of that circumstance upon the market value as of that date [of taking] may be shown" to enable the factfinder to determine what a willing buyer would pay a willing seller for the property as then zoned. 26 N.J. at 116. In Caoili, the Court determined that the value of property could be determined by arriving at a price if the zoning change was granted and applying a discount to reflect the fact that the change was only a probability. 135 N.J. 272.

Importantly for purposes of this appeal, the Caoili Court explained:

> [S]o long as the method used yields a current value rather than a future value, whether the appraiser starts with the value as currently zoned and adjusts upward, assigning a "premium" to reflect the likelihood of a zoning change, or starts with the value of the property as it is likely to be zoned in the future, assigning a "discount" of that value to account for the likelihood of such a zoning change, would not appear significant.
>
> [Id. at 271-72.]

Caoili thus builds upon law established in Gorga, clearly stating that both the "premium" and "discount" methodologies are sound bases for determining damages. Indeed, ultimately, the calculation for just compensation is intentionally not formulaic. See Kugler, 58 N.J. at 384. Stated another way, a

11

trial court has discretion to determine the just compensation amount based on evidence and practical standards. See ibid.; Rova Farms, 65 N.J. at 484.

We are satisfied the trial court acted appropriately in choosing its methodology for determining the amount of just compensation, and we decline to substitute our judgment for the trial court's in deciding which of two distinct, but equally valid, methodologies to employ for calculating damages.

IV.

We turn next to defendant's contention that the trial court erred in awarding simple interest based on the Rule 4:42-11 rate. Defendant argues that "[t]he trial court's ruling with respect to interest is not based on factors relevant to satisfy the constitutional requirement of just compensation." Specifically, defendant contends that the trial court should have used market rate, rather than the rate set forth by Rule 4:42-11(a)(iii). Defendant also challenges the trial court's decision to impose simple interest, rather than compound interest. Defendant broadly alleges that trial judges often "wrongly" rely on Rule 4:42-11(a)(iii) to "deny compound interest . . . even though such reliance is inconsistent with the constitutional mandate of just compensation."

The law is well-settled that "the allowance of interest on a condemnation award is a requirement of constitutional magnitude where the actual taking of

12

the property is not contemporaneous with payment."  Borough of Saddle River v. 66 E. Allendale, LLC, 424 N.J. Super. 516, 540 (App. Div. 2012), rev'd on other grounds, 216 N.J. 115 (2013) (quoting Borough of Rockaway v. Donofrio, 186 N.J. Super. 344, 353 (App. Div. 1982)).  The New Jersey Eminent Domain Act (Act), N.J.S.A. 20:1-1 to 4-22, provides in pertinent part, "[i]nterest as set by the court upon the amount of compensation determined to be payable hereunder shall be paid by the condemner from the date of the commencement of the action until the date of payment of the compensation."  N.J.S.A. 20:3-31.  The Act further provides, "[u]nless agreed upon by the parties, the amount of such interest shall be fixed and determined by the court in a summary manner after final determination of compensation, and shall be added to the amount of the award or judgment, as the case may be."  N.J.S.A. 20:3-32.

Importantly, "trial judges have broad discretion in setting the interest rate on a judgment."  Borough of Saddle River, 424 N.J. Super. at 540.  There is no uniform categorical rule.  See Nierenberg, 345 N.J. Super. at 479 (noting "[t]he Legislature has not provided a uniform rule or any other guidance concerning the issue.").

To determine the interest rate, "[t]he judge should consider the prevailing commercial interest rates, the prime rates of interest, and the legal rates of

A-0812-23

interest, and select the rate 'which will best indemnify the condemnee for the loss of use of the [just] compensation.'" Id. at 478 (quoting Township of Wayne v. Cassatly, 137 N.J. Super. 464, 474 (App. Div. 1975)). Courts can also rely on Rule 4:42-11 to set the interest rate. See Hauck, 317 N.J. Super. at 595 (affirming the trial court's reliance on Rule 4:42-11 where "interest rates had remained stable during the pendency of these proceedings"); Jersey City Redevelopment Agency v. Clean-O-Mat Corp., 289 N.J. Super. 381, 401 (App. Div. 1996) (finding "no abuse of the Law Division's discretion in relying on the rates provided by R. 4:42–11" as "[t]he principle of restoring the condemnee to its position on the date of the taking recognizes the time value of money as a general economic fact. It does not prevent the trial court from applying the legal judgment rates.").

In the present matter, defendant filed a motion to fix interest. At the ensuing hearing, rather than presenting expert testimony, defendant submitted a certification from an executive of the bank that holds a mortgage on the property and a certification from Brody with respect to the prime rates of two banks and the American Council of Life Insurers (ACLI). Defendant asserted, "[w]e think . . . we provided a basis . . . for . . . a mortgage rate in the amount of the mortgage, which encumbers the subject [p]roperty." When the trial court asked whether a

14

hearing was necessary to present evidence concerning interest rates, defendant replied, "I think you have everything, as far as the defendant's concerned, Your Honor."

Based on the parties' submissions, the court awarded defendant simple interest at the rate provided for under Rule 4:42-11(a). In its written decision, the trial court recounted the parties' arguments, the applicable law, and the evidence submitted. The court held there was no need for either party to submit additional papers; nor was there any need to hold an evidentiary hearing. The court considered defendant's mortgage rates, Rule 4:42-11 rates, Prime Rates, and ACLI rates.

The court found that defendant's mortgage rates have been "fairly stable or going down from 2019 to July of 2022. Then beginning in July of 2022 rates be[gan] creeping up." Given this stability, the court determined that there was "no reason to make [plaintiff] pay the higher interest rate beyond that provided for in R. 4:42-11(a)(iii)." Moreover, the court determined simple interest was adequate.

We conclude the trial court did not err in determining that the Rule 4:42-11 interest rate was appropriate. Defendant contends that Cassatly "requires the use of applicable market rates and is diametrically opposed to basing the

A-0812-23

applicable rate in the individual case on a rule." Defendant's reliance on Cassatly is unpersuasive. Cassatly does not create a categorical rule. Instead, Cassatly explains that "the appropriate rate of interest cannot be determined by an uninformed judge," explaining:

> The statutory requirement that the rate of interest be determined 'in a summary manner' does not necessarily imply a proceeding devoid of evidential input. After receiving evidence as to prevailing commercial interest rates, the prime rate or rates, and bearing in mind the applicable legal rates of interest, which should certainly be regarded as highly evidentiary (Jersey City v. O'Callaghan, 41 N.J.L. 349, 354 (E. & A.1879)), the judge should then select that rate or rates of interest which will best indemnify the condemnee for the loss of use of the compensation to which he has been entitled from the date on which the action for condemnation was instituted, less interest on all amounts previously deposited from the date of deposit. If no evidence is given as to the prevailing commercia[l] rate, the court may conclude that the legal rate of interest reflects that rate, although the landowner is not entitled as a matter of right in all cases to an allowance of interest at the maximum legal rate. The interest rate selected should not, however, exceed the legal rate.
>
> [Id. at 474-75.]

Here, the trial court was not uninformed. Although defendant eschewed the opportunity to present expert testimony to counter the State's expert on the question of interest, the trial court considered the pertinent data. As we have

16

noted, the trial court considered interest rates from defendant's mortgage, ACLI commercial mortgage contract rates, prime rates, and Rule 4:42-11 rates. We thus conclude the court made an informed decision as required by Cassatly. In these circumstances, we decline to impose a different interest rate than the one selected by the trial court.

We likewise conclude the trial court did not err in imposing simple interest rather than compound interest. Rule 4:42-11 states: "judgments . . . shall bear simple interest." We are unpersuaded by defendant's reliance on Borough of Wildwood Crest v. Smith, 235 N.J. Super. 453 (Law. Div. 1988), aff'd, 235 N.J. Super. 404 (App. Div. 1988). In that case, the trial judge wrote, "[t]he question that we need now decide is whether or not interest should be compounded annually. Counsel have been unable to find any New Jersey case law on the subject. There is but a sparse treatment of the subject matter on the Federal level." Id. at 455. After analyzing three federal cases, the trial judge concluded that annual interest should be awarded, stating "[t]o apply an annual interest rate for the use of withheld funds and not insist on either timely payment of interest (concededly impossible) or annual compounding would be fatal to the very hypothesis that the detention is to be treated as a prudent business transaction." Id. at 458. We affirmed the trial judge's imposition of compound interest over

simple interest, "substantially for the reasons given in [the trial court's] written opinion." Borough of Wildwood Crest v. Smith, 235 N.J. Super. 404, 407 (App. Div. 1988).

We do not read our affirmance as suggesting a categorical rule mandating the use of compound interest in condemnation cases. While disagreeing with its application, defendant acknowledges that courts in this State continue to rely on Rule 4:42-11 and award simple interest. See Borough of Saddle River v. 66 E. Allendale, LLC, 424 N.J. Super. 516, 541 (App. Div. 2012), rev'd on other grounds, 216 N.J. 115 (2013) (affirming the trial court's use of the Rule 4:42-11 interest rate and finding no abuse of discretion in the trial court's determination to apply a simple rate of interest). As we have noted, the Borough of Saddle River court acknowledged that the Legislature "has not provided a uniform rate of interest in condemnation actions." 424 N.J. Super. at 541-42. Accordingly, we "decline[d] to accept [the] defendant's constitutional and policy argument" that there is a "clear constitutional obligation of providing annual compound interest." Id. at 541-42; see also Hauck, 317 N.J. Super at 548 ("We cannot fairly say that the Law Division's decision was clearly a mistaken one and was so plainly unwarranted that the interests of justice demand intervention and correction. Nor does the record suggest that the judge went so wide of the mark

that a mistake must have been made. We discern no error in the award of interest.").

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0812-23